RAYMOND B. ALEXANDER *v.* MARY LEE ALEXANDER

5-4072                                     410 S. W. 2d 136

Opinion delivered January 9, 1967

*Edgar R. Thompson,* for appellant.

*W. J. Walker,* for appellee.

PAUL WARD, Justice. Involved here is a property settlement incident to a divorce decree.

Raymond B. Alexander (appellant) and Mary Lee Alexander (appellee) were married in 1936 and lived together until Dcember 3, 1961 when appellant left. They quit living together as man and wife on August 18, 1962.

*Pleadings.*

On November 5, 1962 appellee filed a suit for separate maintenance and a property settlement. Appellant filed a general denial, containing allegations that appellee withdrew $1,234.60 from their account before filing her complaint and that appellee was gainfully employed. Later appellant filed a cross-complaint alleging that appellee treated him with indignities, that she abandoned him, that they had been separated more than three years,

and that she was able to work but refused to do so. He also asked that temporary maintenance (previously granted) be reduced and that he be given a divorce. Then, in an amended complaint, appellee prayed for an absolute decree of divorce, possession of the home and a division of real and personal property.

After extensive hearings over a period of several months the court, on December 16, 1965, entered, in substance, the following decree: (a) appellee was granted an absolute divorce; (b) appellee was given possession of their home with the provision that she be responsible for payment of all taxes, insurance and maintenance expenses thereon; (c) all transfers of stock in Alexander, Inc. (a corporation organized by appellant) made by appellant to his son, Ray, after August 18, 1962 were set aside as being fraudulent transfers; (d) appellant was ordered to transfer to appellee 17,905 shares of stock in said corporation, being one-third of the 53,710 shares owned by him on August 18, 1962; (e) appellee was ordered to give appellant one-half of $375 worth of government bonds held by her (the parties having agreed on a division of two parcels of real property), and; (f) appellant was ordered to pay appellee $100 per month as alimony. The trial court retained jurisdiction of the cause to enforce and protect the rights of the parties.

For a reversal appellant relies on only three points: *One,* the court erred in cancelling the stock (in Alexander, Inc.) which appellant had transferred to his son; *Two,* it was error to allow appellee alimony, and; *Three,* it was error not to require appellee to account for money she had used for certain joint accounts.

*One.* We agree with appellant that it was error to cancel the stock transfers because the son was not made a party to the litigation. See: *City of Bentonville* v. *Browne,* 108 Ark. 306 (p. 311), 158 S. W. 161, and *Bryan* v. *Akers,* 177 Ark. 681 (p. 682), 7 S. W. 2d 325. We also agree with appellant's statement that it was not neces-

sary to cancel the stock held by the son because appellant "was left with adequate stock to make the transfer [to appellee] without setting aside the transfer to the son of the parties hereto". It appears likely that the trial court meant to cancel only such transfers as was ncessary to protect appellee, but the decree is modified as indicated.

*Two.* We do not agree with appellant's contention that it was error to allow alimony to appellee.

In the case of *Lewis* v. *Lewis,* 202 Ark. 740, 151 S. W. 2d 998 there appears this statement.

"This court has many times announced the rule that in fixing the amount of alimony to be awarded a wide discretion rests with the trial court and unless there appears to be a clear abuse in the exercise of this discretion it will not be disturbed by this court."

In that case we also pointed out that consideration should be given to the ability of the husband to pay and the station in life of the parties. To the same effect see: *Foster* v. *Foster,* 216 Ark. 76, 224 S. W. 2d 47 and *Harbour* v. *Harbour,* 230 Ark. 627, 324 S. W. 2d 115. We may also add that, in fixing the amount of alimony, the financial needs of the wife should not be overlooked. When the testimony in this case is weighed in the light of the above rules we are unable to say the trial court abused its sound discretion in allowing the amount of alimony above mentioned. The record reveals that appellant and his son had withdrawn in excess of $25,000 from the corporation in less than a year, not counting an expensive boat bought for them or the corporation; that he draws an annual salary in excess of $5,000 not counting an expense account, and; that he owns real estate of undisclosed value.

The record also discloses that appellee was earning $88.42 per month at the time of the divorce; that the house in which she lives is in need of extensive repairs

and that she is not able to work regularly because of bad health, being afflicted with bronchitis and chronic kidney and bladder trouble. She testified that she needed approximately $250 per month for living expenses.

*Three.* Finally, appellant contends the court "erred in declining to require appellee to deduct, from her portion of the marriage estate, the sums which she had withdrawn from the estate personally".

We find no merit, and no reversible error, in this contention. The record discloses there was a deposit in the name of appellant or appellee in the sum of $1,234 which appellee withdrew because (she testified) she needed the money for living expenses due to the fact that appellant failed to pay support money as had been previously ordered by the court. The above money, according to appellee, was deposited in the Union National Bank and used as mentioned above. It appears that appellee in 1962 earned $1,100 which she deposited in another building and loan association, which, of course, was her own money.

It must be presumed that the trial court, took into consideration the above facts, together with appellee's health and inability to work regularly, in making the proper settlement, and we are unwilling to say there was any abuse of discretion.

The decree, as modified, is therefore affirmed. Appellant is ordered to pay all costs incident to this appeal including a fee for appellee's attorney in the sum of $200.

Modified and affirmed.

BYRD, J., dissents.