621 P.2d 505

**Mary Helen (Lekvold) HENDERSON, Petitioner–Appellant and Cross–Appellee,**

v.

**Gary Louis LEKVOLD, Respondent–Appellee and Cross–Appellant.**

**No. 12852.**

Supreme Court of New Mexico.

Dec. 8, 1980.

Rehearing Denied Jan. 8, 1981.

Miller & Associates, Ltd., Hartley B. Wess, Albuquerque, for petitioner–appellant and cross–appellee.

Martin, Hilton, Latimer & Hollowwa, E. Douglas Latimer, Albuquerque, for respondent–appellee and cross–appellant.

## OPINION

EASLEY, Senior Justice.

Mary Lekvold Henderson's suit against Gary Lekvold sought both arrears in child support payments and the enforcement of an escalating schedule of child support in accordance with the parties' stipulated divorce decree. Lekvold's motion to reduce his child support obligations was granted. Mrs. Henderson appeals. We reverse and remand.

We address the following issues:

1. whether Lekvold could rely on his excessive voluntarily–incurred financial obligations as a basis for reduction of his child support obligations;

2. whether the trial court properly considered the potential future earnings of Mrs. Henderson in fixing child support;

3. to what extent the trial court could consider the financial resources and lifestyle of Mrs. Henderson and her new spouse, in determining the amount of child support;

4. whether the trial court erred in the weight that was given to the Child Support Guidelines as incorporated into the stipulated divorce decree; and

5. whether the trial court was wrong in denying Mrs. Henderson's costs and attorney fees.

The divorce decree, granted in 1977 and incorporating the stipulation and agreement of the parties, awarded Mrs. Henderson custody of the two minor children and required Lekvold to pay child support payments of $270 per month. This decree also stated:

> [I]n the event that Respondent's (Lekvold) income increases, Respondent shall so notify Petitioner within fifteen (15) days of such increase and shall forthwith increase the amount of monies paid as and for child support in accordance with the Child Support Guidelines promulgated by the court, which are in force and effect at the time of said income increase.

These Child Support Guidelines (Guidelines) are those promulgated by the Bernalillo County District Judges to assist in fixing amounts for child support.

Lekvold is an employee of a federal contractor who was making $17,940 at the time of the divorce. In July 1978 his salary increased to $19,500 and in July 1979 it increased to $21,060. According to the Guidelines, $270 per month for two children was the appropriate amount at the time of the divorce. According to the Guidelines the amount should have been increased to $315 and then to $355 to reflect the pay increase of Lekvold. Before these proceedings commenced he voluntarily increased his child support payments for a while to $315, then dropped the payments to $270.

The divorce decree provided that the parties would own the home as tenants–in–common; that Henderson would live there and *make the mortgage payments*; but, that at such time as she no longer desired to live in the residence, it would be sold and the money divided. Lekvold later negotiated a purchase of Mrs. Henderson's one–half interest. At the time of this hearing, he was living in the large three–bedroom house alone. He has not remarried and the primary strain on his finances is the mortgage payments on this house. Lekvold testified that he had used all of his available cash and savings for the purchase of the half interest in the house, in payment of his child support obligations, and for payment of a $1,500 settlement with Mrs. Henderson for her lost wages and hospital expenses as

a result of a post–divorce battery on her. Lekvold testified that he is broke and only eats "chicken–noodle soup and McDonald hamburgers."

Mrs. Henderson was employed as a legal secretary at the time of the divorce, making approximately $7,000 to $8,000 per year. By the time of his hearing, she was no longer employed because she, the parties' two children, her new husband and his minor son had moved to Wyoming. Mrs. Henderson testified that she had been searching for employment but had not yet found any. She thought she would be able to find a job paying as much as $1,200 per month. Her new husband was making $21,000 a year at his new job in Wyoming, almost the identical amount of Lekvold's salary. Some testimony at the hearing went to the fact that she and her new spouse had purchased an $80,000 home in Wyoming, a new car and had spent considerable money on their hobby of skeet shooting. She testified that the children, both girls, were ten and fourteen years of age at the time of the motion hearings (now eleven and fifteen years); that the cost of supporting them had increased as they got older; that the cost of living had escalated appreciably since the divorce; and that the living expenses in Wyoming were higher than in Albuquerque. She admitted that the "lifestyle" for her and the children had improved after her remarriage.

Mrs. Henderson contended that as of September 15, 1979 Lekvold was delinquent in child support in the amount of $1,794.81 based upon testimony as to payments made and the corresponding salary increases of Lekvold as applied to the Child Support Guidelines. The trial court found that the arrearage in child support amounted to $864.94, but allowed Lekvold $270 credit for payment of community debts that surfaced after the divorce. Mrs. Henderson claimed that the $591.94 awarded her by the trial court was not supported by the evidence or a finding and that the record is silent as to how the figure was derived.

The trial court found that there had been no order of the court issued or requested, previous to the motion in this case, to force compliance with the provision in the decree for an escalation of the child support payments as the wages of Lekvold increased and that therefore the trial court could not award the increased amount that would have resulted from the prior entry of a court order to that effect.

The trial court further held that the husband had been unable to pay "the substantial indebtedness of the parties and maintain his obligation to pay child support"; that there had been a substantial and favorable change in the mother's financial circumstances since her remarriage; that the lifestyle of the children had improved considerably; that the child support was reduced to $100 per month and that the parties should bear their own costs and attorney fees.

Although findings were requested by Mrs. Henderson, the court made no findings on the amount or dates of the increases in Lekvold's wages; the amount of increase that was thus generated under the original decree by way of increase of child support; the increase in the financial burden on Lekvold resulting from his investing in the home previously owned by the parties amounting to approximately $600 per month; the amount of increases in expenses caused by inflation; the higher cost of living in Wyoming and the added amount necessary for the older children; and the decrease in her income because of not having a salary.

## 1. Father's Voluntary Increase of Debt.

■ To warrant modification in the amount of child support already awarded there must be a substantial change of circumstances which materially affects the existing welfare of the child and which must have occurred since the prior adjudication where child support was originally awarded. *Spingola v. Spingola*, 91 N.M. 737, 580 P.2d 958 (1978).

Lekvold raised two factual issues bearing on this point. He claimed that the purchase of the house and the consequent financial burden of making the payments was a sub-

stantial change of circumstances affecting his ability to pay child support. The other change that he relied upon is that the ability of Mrs. Henderson to support the children had increased considerably so that she could afford the additional outlay of money to make up for his reduced payments. The latter point was hotly contested by Mrs. Henderson who claimed there was no evidence in the record to support this charge. We discuss this latter dispute elsewhere, and turn our attention to the additional burden of the voluntarily–incurred increase for house payments.

The only finding of the trial court that could have any bearing on this issue was one which stated that Lekvold "has been unable to pay the substantial indebtedness of the parties and maintain his obligation to pay child support." The only additional debt mentioned in the record, that Lekvold was not obligated to pay at the time of the divorce, is the $400 to $500 in debts discovered after the divorce was granted. The obligation of Lekvold to make payments on the house was set out in the decree. There is no change of circumstances indicated as regards this debt. His wages had increased by $3,000 up to $21,000 per year since the divorce was granted. The record falls short of being convincing that, as a single man, there was such a burden on his finances that he was near starvation and was entitled to virtually abandon his solemn obligation to support his children.

■ Although a trial court should, and did here, consider the various circumstances that bear on both parents' ability to provide needed support, see *Spingola, supra,* both parents still have the duty to support their minor children. *Petition of Quintana,* 83 N.M. 772, 497 P.2d 1404 (1972); § 40–4–7(B)(3), N.M.S.A. 1978. We are faced then with the issue of whether this duty is decreased when a parent voluntarily assumes an excessive financial burden only for, as Lekvold testified, his convenience and investment. We hold that it is not.

A case nearly on point is *Bergh v. Bergh,* 160 So.2d 145 (Fla.App.1964). There the father's changed financial condition was due in substantial part to his voluntary agreement to purchase from his ex–wife her interest in their jointly–owned property. In *Bergh* the Florida appeals court upheld the trial court's refusal to decrease the child support obligations. This is the general rule. *See Annot.,* 89 A.L.R.2d 7 (1963).

■ We recognize that any change in child support is a matter within the discretion of the trial court and that our review is limited to examining the record only to determine if the trial court abused its discretion by fixing an amount contrary to all reason. *See Spingola, supra.* We hold that where Lekvold's salary has *increased* and the increased burden on his finances is the result of an obligation he incurred voluntarily, it was an abuse of discretion for the trial court to *reduce* his child support obligations to such an extent.

2. *Mother's Potential Future Earnings.*

■ Although the trial court made no specific findings, it appears to be inherent in the court's decision that it considered Mrs. Henderson's potential future earnings as a factor in reducing Lekvold's child support obligations. Prospective changes in a parent's financial condition are not grounds for modification of a child support decree. *See Stovall v. Stovall,* 228 Ark. 1077, 312 S.W.2d 337 (1958); *Harris v. Harris,* 138 So.2d 376 (Fla.App.1962), *cert. denied,* 138 So.2d 376 (1962); 89 A.L.R.2d, *supra.*

3. *Mother's Remarriage.*

The trial court stated in support of the reduction of Lekvold's child support obligations that "there has been a substantial and favorable change in the mother's financial circumstances since her remarriage and the lifestyle of the children has improved considerably as a result." Since Mrs. Henderson was not even employed at the time of the hearing, the only other financial change in her circumstances indicated in the record was whatever rights she may have in Wyoming to her new husband's earnings. Mrs. Henderson testified that their lifestyle had

improved. But we inquire as to what extent this changed circumstance justifies a reduction of Lekvold's child support.

▉ This Court has held that the remarriage of either or both of the parties may have some effect upon the financial resources available to support and maintain the children and that this factor is one of many to be taken into consideration in modifying a child support award. *See Spingola, supra.* There are not hard and fast rules in this area of the law. *See Annot.,* 89 A.L.R.2d 106 (1963). The totality of the circumstances need to be considered.

Much of Lekvold's testimony at the hearing went to the allegedly frivolous nature of some of Mrs. Henderson's expenditures. However, there is no clear evidence as to the source of this money, whether it came from the separate funds of her spouse or from her own separate resources. There were no findings by the trial court. The evidence is undisputed that, at the time of the hearing, the five–person Henderson household had an income of $21,000. Lekvold was living by himself and also making $21,000.

▉ Clearly, Mrs. Henderson's new husband has no duty to support the parties' minor children. If the trial court's reduction of Lekvold's child support obligations were to stand, then Mrs. Henderson's new husband would have to carry some of the burden of the children's support since $100 per month for children ages eleven and fifteen does not go very far in this day of high prices. In effect, the trial court has shifted the duty of support from the children's father to their step–father. We hold the trial court erred in doing so.

### 4. *Stipulation On Support Guidelines.*

In her suit Mrs. Henderson sought to have Lekvold's child support obligations enforced by the court in conformity with the Guidelines and as provided by the parties' stipulated divorce decree. Although Lekvold had for a time after his second salary increase paid the $315 a month as the Guidelines indicated, he had gone back to paying $270 per month. It is clear that Lekvold knew that he was supposed to conform to the Guidelines as concerns his salary increases and consequent increases in child support payments.

As this Court said in *Unser v. Unser,* 86 N.M. 648, 651, 526 P.2d 790, 793 (1974): "It is a long recognized rule that such settlements between husband and wife (of course in the absence of fraud) are highly favored in the law." (Citations omitted.)

In *Spingola,* the mother relied on the Guidelines, but their use was not agreed upon or mandated by the decree. Nevertheless, we there held that it was error for the trial court to refuse to consider the Guidelines in ruling on a motion to modify.

▉ Lekvold's obligation for support is clearly set forth in the original decree. The Guidelines are incorporated by reference in that document, which also set forth precisely how the amounts are to be increased as his salary increases. There is nothing ambiguous about these provisions. All that is left for the trial court to do is to determine the amount due and enforce its collection. The court cannot properly modify the child support award retroactively, which is the effect of what occurred in the court below. *Gomez v. Gomez,* 92 N.M. 310, 587 P.2d 963 (1978).

It was error for the trial court to refuse to enforce the terms of the original decree.

### 5. *Attorney Fees.*

▉ The trial court denied Mrs. Henderson her costs and attorney fees. Only through this litigation has she been able to assert a right and impose liability. *Unser, supra,* 86 N.M. at 655, 526 P.2d at 797. Considering our disposition of the case, we hold it would be an abuse of discretion to deny her costs and attorney fees. We reverse on this issue as well. The trial court shall fix the attorney fees at both the trial and the appellate levels.

▉ Lekvold contends by cross–appeal that the change in child support should date from the time he called the change in circumstances to the attention of the court by

his pleadings, instead of the much later date of the hearing. This issue was resolved in *Montoya v. Montoya,* 95 N.M. 189, 619 P.2d 1233, No. 12,918 (filed November 19, 1980) in favor of Lekvold's position.

We reverse and remand this case to the trial court for a further hearing, since the court in its decision set October 1, 1980 as a target date for reopening on the child support issue, and for more complete findings on essential facts as indicated in this opinion.

IT IS SO ORDERED.

FEDERICI and FELTER, JJ., concur.