Bonnie Faye FORD *v.* Taid FORD, Jr.

80-227                                    616 S.W. 2d 3

Supreme Court of Arkansas
Opinion delivered May 18, 1981
[Rehearing denied June 15, 1981.]

*Cathey, Goodwin, Hamilton & Moore*, by: *Donis B.*

*Hamilton*, for appellant.

*Burris & Berry*, for appellee.

Joseph C. Kemp, Special Justice. The Decree of the Chancery Court granted Appellee (husband) an absolute divorce from Appellant (wife) and further granted Appellee custody of their minor daughter with Appellant given reasonable rights of visitation, all on uncontested evidence.

The Appellant appealed from certain portions of the Decree raising three issues, namely: (1) That the Chancellor erred in the division of personal property by not applying the criteria contained in Act 705 of 1979; (2) Not awarding alimony to Appellant; and (3) Not awarding Appellant's attorneys an adequate fee.

The Court of Appeals in *Ford* v. *Ford*, 270 Ark. 349, 605 S.W. 2d 756 (Ark. App. 1980) upheld the Chancellor's (1) refusal to award alimony to Appellant retaining jurisdiction for the purpose of awarding alimony in the future should the needs of the Appellant require modification of the Decree; and (2) awarding to Appellant's attorneys a temporary fee of $500.00 and a fee of $1,000.00 at the completion of the case; but (3) reversed the Chancery Court in its division of personal property finding that the Chancellor had not applied Act 705 of 1979, which requires an equal division, but for exceptional circumstances. The Court of Appeals allowed Appellant's attorneys an additional fee of $1,500.00 and costs for their services in connection with the appeal to that Court.

We granted certiorari.

We reverse the Court of Appeals and modify and affirm the Chancery Court in the division of personal property; we affirm the Court of Appeals and the Chancery Court in the allowance of fees and costs to Appellant's solicitors for services, both in the Chancery Court and on appeal to the Court of Appeals, and reverse that portion of the Decree and the decision of the Court of Appeals pertaining to alimony.

The parties were married in March of 1960. Two children were born of the union, namely: a son in 1961 and a daughter in 1974. The parties began their marriage farming on rented land. The Appellant, as the housewife, worked in the home and helped considerably in the fields until approximately 1968. She then worked approximately two years away from the home in private enterprise. Her earnings from such were used for family purposes and/or invested jointly with Appellee. It is disputed as to whether Appellant was a good homemaker, especially in providing for the needs of the Appellee normally coming from within the home. The record reflects that the Appellant began experiencing depression prior to becoming pregnant with their daughter and that such depression became acute a short time prior to the daughter's birth. She was hospitalized prior to the birth of the daughter in Missouri to be treated for the depression and immediately following the birth was transferred directly from the Maternity Wing to the wing for psychological treatment. Since 1974 the Appellant has had intermittent lengthy institutional care for recurrent severe depression and has been regularly under the care of a psychiatrist since that time. She has undergone electric shock therapy and has attempted suicide. The evidence clearly supports the conclusion that Appellant has a genuine longstanding depression of immobilizing effect.

The parties have not resided together for the past five and one-half years, although they have had sexual relations on several occasions, most recently the day before Appellant was served with summons after this suit was filed. The Appellee has clearly been an industrious, capable farmer. Over the years the parties were able to acquire and improve farm lands of approximately 190 acres, to build a home and to accumulate substantial savings and farm equipment, with personal property aggregating approximately $300,000 all debt free. In addition, the Appellee farms some additional 800 acres which he rents from his father.

At the close of the trial the Chancellor made lengthy comments concerning his findings of fact. The decree on uncontested evidence granted the divorce to the Appellee along with the custody of their daughter, which Appellant

conceded to be in the daughter's best interest. All real estate owned as an estate by the entirety was converted to tenancy in common; all real estate, with the exception of the homestead and one acre of land on which it was situated, was ordered sold. Possession of the homestead and one acre of land was given to Appellee until the daughter reaches her majority, or leaves home, at which time the Court may order it sold. Alimony was denied for the time being, but the Court retained jurisdiction as to possible future needs of the Appellant. All personal property owned jointly was converted to tenancy in common and divided equally. All other personal property, with a net value of · approximately $300,000.00 was divided, 10% to Appellant and 90% to Appellee, and Appellee ordered to pay Appellant $30,000.00.

The Brief of Appellant addresses the issue of division of personal property with two arguments, namely:

I

THE CHANCELLOR ERRED IN NOT DISTRIBUTING PERSONAL PROPERTY EQUALLY AS REQUIRED BY ACT 705 OF 1979; and

II

NOTWITHSTANDING ACT 705 OF 1979, THE CHANCELLOR SHOULD HAVE DIVIDED THE PERSONAL PROPERTY EQUALLY BETWEEN THE PARTIES UNDER THE FACTS HERE.

We choose to treat the two arguments together. The provisions of Act 705 of 1979 pertaining to the division of personal property and applicable here, same being Arkansas Statutes § 34-1214, are as follows:

"DIVISION OF PROPERTY. — (A) at the time a divorce decree is entered:

(1) All marital property shall be distributed one-half (1/2) to each party unless the court finds such a division to be inequitable, in which event the court shall make

some other division that the court deems equitable taking into consideration (1) the length of the marriage; (2) age, health and station in life of the parties; (3) occupation of the parties; (4) amount and sources of income; (5) vocational skills; (6) employability; (7) estate, liabilities and needs of each party and opportunity of each for further acquisition of capital assets and income; (8) contribution of each party in acquisition, preservation or appreciation of marital property, including services as a homemaker. When property is divided pursuant to the foregoing considerations the court must state in writing its basis and reasons for not dividing the marital property equally between the parties.

(3) Every such final order or judgment shall designate the specific property both real and personal, to which each party is entitled; and when it appears from the evidence in the case, to the satisfaction of the court, that such real estate is not susceptible of the division herein provided for without great prejudice to the parties interested, the court shall order a sale of said real estate to be made by a commissioner to be appointed by the court for that purpose, at public auction to the highest bidder upon the terms and conditions, and at the time and place fixed by the court; and the proceeds of every such sale after deducting the costs and expenses of the same, including the fee allowed said commissioner by said court for his services, shall be paid into said court and by the court divided among the parties in proportion to their respective rights in the premises ...

(B) For the purpose of this statute "marital property" means all property acquired by either spouse subsequent to the marriage except:
(1) Property acquired by gift, bequest, devise or descent;
(2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise or descent;
(3) Property acquired by a spouse after a decree of legal separation;
(4) Property excluded by valid agreement of the parties;

and
(5) The increase in value of property acquired prior to the marriage."

At the close of the trial the Chancellor dictated into the record extensive findings of fact so as to give clarity to the Decree. They are:

First I want the record to reflect that although neither party has filed any formal pleadings as to the applicable law, advancements have been made as to the constitutionality of Act 705 of 1979 as applied to this case. The court is satisfied that Act 705 cannot apply retroactively to entirety estates created before enactment of 705 and that *Poskey* v. *Poskey*, 228 Ark. 1, is in point.

The court finds that the plaintiff, Taid Ford, Jr., is entitled to a divorce and it has been treated as an uncontested action for divorce. Taid Ford, Jr., is a proper party to have custody of the five-year old child of the parties, Brandy Ford. The court does not deem it proper to enter any decree as to custody on Barry Ford who is 18 years of age and is a student at Arkansas State University.

With respect to the property division the court finds that the parties were married in March, 1960, in New Jersey and moved back to Arkansas to begin farming in 1961. Taid Ford, Jr. is and has been throughout the marriage an unusually hardworking aggressive farmer. The defendant, Bonnie Ford, assisted Mr. Ford to a limited extent on the farm in the 1960s. She chopped some cotton, picked some cotton and weighed sacks of cotton as they were brought in by other pickers. From sometime, probably in 1967, Mrs. Ford did not assist her husband in the farming operations and spent a good deal of her time sitting in one green colored rocking chair in her house suffering from severe depression. Mrs. Ford went to work at the McGee Company in Pocahontas, Arkansas, probably in 1970, and worked there probably through 1972. Her earnings

from the McGee Company were commingled with her husband's earnings from the farming ventures through that time. Commencing probably about January 1, 1973, Bonnie Faye Ford began to suffer from severe depression, stayed in the home most of all of 1973 contributing little to the farming efforts. About January, 1974, she became pregnant with the child, Brandy, who was born September 27, 1974. From approximately July, 1974, to this date defendant has spent most of her time either as an in-patient or an out-patient. The defendant has gone through electric shock treatments on two occasions and had other chemical treatments so that her memory is extremely vague.

The defendant went to St. Louis two or three months before her child was born to see a psychiatrist and was sent to a wing referred to as the "psych ward." She was then sent to a regular part of the hospital and had her baby on September 27, 1974, and went back into the "psych ward" and had shock treatments. At some stage she stayed with her sister and had an apartment of her own in St. Louis. She was again hospitalized in Missouri Baptist Hospital and then was transferred to the Malcolm Bliss Mental Institution and was back to the Missouri State Hospital for shock treatment shortly again. She returned to Arkansas to stay with her mother and father and was there a short time when she attempted suicide by an overdose of drugs and went to George Jackson Hospital. She was under care for a while there and then under the care of a private psychiatrist in rehabilitation and then back to her mother and father's. In May she returned to the George Jackson Mental Health Center, was out for a short time and has been back in the hospital as an in-patient since September 10, 1979. This summation is given to show the fact that Bonnie Ford has not contributed any work to the marriage at all during the last five and a half years.

The parties owned as tenants by the entirety the 29 acres and the court orders that the tenancy entirety be converted to a tenancy in common. The plaintiff, Taid

Ford, Jr. shall have possession of the homestead and the one acre on which it is located and the other 28 acres shall be sold at public sale with either party being allowed to bid. Possession of the one acre and the homestead shall be in Taid Ford, Jr. until such time as Brandy Ford shall reach the age of majority or leave home, after which time the court may order the sale of the home.

The parties own as tenants by the entirety the 157 acres and that is converted to a tenancy in common and shall be sold at public sale.

The court denies the defendant any interest in any of the principal or income from the 80 acres in the Taid Ford, Jr. Trust which is identified by Exhibit "1".

The court denies the defendant any interest in the 80 acres of hill land which is in the name of Barry Ford and purchased from a bank account in the name of Taid Ford, Jr. and Barry Ford.

The court finds that Taid Ford, Jr. is without fault in the divorce and finds that Bonnie Faye Ford has not contributed anything of substance to the marital property during the last five and a half years. However, the court finds under the circumstances she should share in some of the personal property.

Plaintiff is in possession of approximately $160,000.00 of farming equipment. While it is true that defendant has contributed nothing in the last few years to the acquisition of the property, it is true that she worked both in the home and to a limited extent on the farm and did work at a local factory some years ago and contributed in the early years of the acquisition. Plaintiff has testified that one-fifth to one-sixth of his earnings come from the property held as tenants by the entirety and during the last few years he has supplied very little money to the defendant. Therefore, the court thinks it proper to award her that part of the property which should be hers.

Plaintiff has testified that the bulk of the property has been bought since 1974 when federal allotments were changed and farmers could farm all the rice they wanted to farm. He has testified that rice requires extensive machinery and that is the reason for having $160,000.00 worth of equipment. The earnings of the plaintiff over the last five years run from a low of approximately $59,000.00 before tax to a high of approximately $83,000.00.

Assuming that 20% of the plaintiff's income came from land owned by tenancy by the entirety, then half of that 20%, or 10%, of the purchase price of each piece of farm equipment would have come from lands which equitably should be attributed in this accounting to Bonnie Faye Ford and on farm equipment alone this would amount to $16,000.00 to her. At the present time plaintiff has 4,000 bushels of soybeans in storage worth $6.25 a bushel, which makes the beans worth $25,000.00 and 20,000 bushels of rice worth $4.00 a bushel, or $80,000.00, making a total of $105,000.00 worth of crops in storage. On this $105,000.00 income taxes have not been paid and there is due crop rent of 25% on part of the crop. (At this point counsel for Mrs. Ford inquired to ask the court if it were finding $25,000.00 worth of beans and $100,000.00 worth of rice. The court responded that it was finding $80,000.00 for the rice for a total of $105,000.00. The court stated it understood Mr. Ford to testify that he had 20,000 bushels of rice at $4.00 a bushel in the elevator and that counsel mistakenly understood him to testify to 25,000 and if there was an error the court would change the figure.)

The court found from the testimony that there was a net amount of approximately $60,000.00 worth of beans and the court orders $6,000.00 to be paid to Mrs. Ford in lieu of property.

The same formula could be applied on each of the following: The debt from Harry Jones would result in a $2,200.00 allocation to Bonnie Faye Ford. (Counsel for Mrs. Ford again interrupted the judge to remind him

that the proof showed that it was $22,000.00 two years ago and there would be 10% interest on that. The court responded as follows: "Well, it really doesn't matter. It really doesn't matter because I am going to round this off in the end. I'm simply giving — I'm not doing this for you, gentlemen, I'm doing it for the benefit of the parties so they will know exactly — I'm going to come up with a figure of $30,000.00 which is a rounded figure, and I'm doing this solely for their benefit, so they will understand where it came from.")

The same formula may be applied to the $25,000.00 Treasury Bond, the $22,500.00 deposit by the plaintiff in the tax-free Keogh plan at Farmers and Merchants Bank; the court uses the same formula on the account at the Bank of Pocahontas, the Farmers and Merchants Bank, the speed boat, the fishing boat and the stocks and delivery debentures and to equitably divide that property the court orders Mr. Ford to pay Mrs. Ford $30,000.00 for her interest in those properties.

The court finds that the bank account in the approximate sum of $4,260.00 is owned by both parties and is to be shared equally.

The court orders the plaintiff to cause to be transferred to the defendant 10% of all the stock and delivery debentures which are in his name alone and orders that those in joint names be converted to a tenancy in common.

The court finds that even though Mr. Ford is without fault, the court can award a reasonable attorney's fee considering all the circumstances and that Mrs. Ford's attorney has done a good deal of work for a relatively impecunious client and, therefore, the court assesses $1,000.00 against Mr. Ford to be paid to Mrs. Ford's attorneys.

The following is for the benefit of an appellate court in the event of an appeal and in the event it would give a prospective opinion. This court is concerned that Mrs.

Ford will be back for additional alimony in the future, for a monthly amount as is proper under my decision. Because this court is not satisfied that Mrs. Ford will have her property six months from now and had the arguments not been raised, the court could have applied Act 705 retroactively against the vested interest of the parties and could have placed all the lands in Mr. Ford's name and could have ordered him to pay a substantial weekly sum. It is the humble opinion of this trial court that would have been a better decision. Of course, if this should be appealed by either party at a de novo trial and the appellate court, if it doesn't like this court's devision, could divide the property as it saw fit for the first time there. If it sees fit to reject the *Poskey* v. *Poskey* arguments it could make such application under Act 705 and perhaps give guidance for trial courts.

The court declines to set weekly or monthly alimony in this case. The court reserves jurisdiction in the case and assumes that in a very short time the property will be gone and the case will come up again.

We agree with the Court of Appeals that Act 705 of 1979 was the applicable law pertaining to division of property. Act 705 was effective at the time the Decree of Divorce was dated on December 19, 1979 and at the time it was entered of record on January 23, 1980. We disagree, however, with the Court of Appeals in holding that the Chancellor did not comply with the provisions of Act 705 of 1979 by failing to divide the personal property equally. We hold that the Chancellor's findings fully support his division of the property owned other than as tenancy in common on the basis of 90% to the Appellee and 10% to the Appellant. We note particularly that his findings address the criteria to be given consideration by the Court in making a division other than equal set forth in Arkansas Statutes § 34-1214(A)(1) above cited. We therefore reverse the holding of the Court of Appeals on this point. We further find that the Chancellor mistakenly found that the Appellee had only 20,000 bushels of rice valued at $4.00 per bushel for a total of $80,000.00 when in fact the record reflects that there were 25,000 bushels

of rice at $4.00 per bushel for a total of $100,000.00. Therefore, we modify the Chancellor's money award to the Appellant increasing it by the sum of $2,000.00 making a total award of $32,000.00.

We turn next to Appellant's argument No. 3, which is:

### III

### THE CHANCELLOR ERRED IN NOT AWARDING APPELLANT ALIMONY.

The Court of Appeals upheld that portion of the Decree of the Chancery Court holding that "The Court declines to award alimony to the Defendant, but retains jurisdiction for the purpose of awarding alimony in the future should the needs of the Defendant require modification of the Decree." Arkansas Statutes § 34-1211 pertaining to alimony, in part provides:

> "When a Decree shall be entered the court shall make such order touching alimony of the wife or the husband and care of the children, if there be any, as from the circumstances of the parties and the nature of the case shall be reasonable." . . .

We recognize that the allowance or disallowance of alimony in a divorce action is at the Chancellor's discretion, after consideration of all circumstances. (*Lewis* v. *Lewis*, 255 Ark. 583, 502 S.W. 2d 505 [1973]). However, we interpret Arkansas Statute § 34-1211 as requiring that the Decree of Divorce allow or disallow alimony and not retain jurisdiction for the purpose of allowing or disallowing it in the future based on changed conditions. We therefore reverse the Court of Appeals and the Chancery court and award Appellant alimony in the amount of Fifty ($50.00) dollars per month subject, of course, to modification based on changed circumstances.

Finally, we address Appellant's argument No. 4, which is:

IV

THE ATTORNEY'S FEE AWARDED TO AP-
PELLANT BY THE CHANCELLOR IS INADE-
QUATE UNDER THE CIRCUMSTANCES HERE.

The Chancellor allowed Appellant's solicitors a tem-
porary fee of $500.00 and a fee of $1,000.00 at the completion
of the trial. The Court of Appeals affirmed the Chancery
Court on this point and allowed Appellant's solicitors an
additional fee of $1,500.00 and costs for services rendered in
the appeal to that Court. Appellant argues that the allow-
ance of these fees is grossly insufficient. For the record we
note again that the allowance of fees is within the sound
discretion of the trial court and will not be disturbed on
appeal in the absence of clear abuse. *Equitable Insurance
Society* v. *Rummell*, 257 Ark. 90, 514 S.W. 2d 224 (1974). We
agree with the Court of Appeals that this principle is
especially apt when applied to domestic suits where, as here,
substantial assets are involved; where, as here, the wife's
share of all the properties is sizable, it is even more
appropriate for the trial court's discretion to govern as he is
in the position of balancing and weighing many factors
against each other. The Appellant is receiving substantial
resources for her own use and doubtless can financially
afford to participate in her attorneys' charges. Many cases
affirm the wisdom of giving the trial court broad discretion
to determine what portions of a wife's attorneys' fees should
be paid by the husband. *Lytle* v. *Lytle*, 266 Ark. 124, 583 S.W.
2d 1 (1979); *McGuire* v. *McGuire*, 231 Ark. 613, 331 S.W. 2d
257 (1960); *Yohe* v. *Yohe*, 238 Ark. 642, 383 S.W. 2d 665
(1964); *Cook* v. *Cook*, 233 Ark. 961, 349 S.W. 2d 809 (1961).
We affirm the trial court's award of $1,500.00 attorneys' fees
and the Court of Appeals' award of $1,500.00 and costs for
services involved in the appeal to that Court, and further and
additionally allow Appellant's solicitors a fee of $750.00 for
services rendered in this Certiorari Review.

Reversed in part and affirmed as modified.

Special Justice SAM HILBURN joins in this opinion.

DUDLEY and HAYS, JJ., disqualified and not participating.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. I disagree with the majority in the matter of the settlement of the personal property owned by these parties at the time of the divorce. I accept the figure of $300,000 as the value of the personal property owned by them at the time of the dissolution of the marriage. However, I cannot accept the division of the property in a manner which gives the husband 90% and the wife 10% of the jointly owned property. Equity requires reversal of these figures if the property is to be divided other than in equal shares as required by Act 705 of 1979.

According to the majority ruling in this case, women are worse off now than they were before Act 705 was enacted by the General Assembly. Divorced women cannot stand any more progress if this is progress.

The parties to this action were married when appellant was 17 years of age and still enrolled in high school. She went to New Jersey, where he was stationed in the service, and married her 21 year old sweetheart who was a college graduate. At that time neither party owned any property and in fact the appellee was in debt to his father. The following year (1961) the couple started their life together as share-croppers. Soon they purchased a 157-acre farm and subsequently paid for it. His family gave them 29 acres upon which they built a home. The appellee has continued to expand his operations even while the appellant has been hospitalized. He, no doubt, is a hard worker and has a head for business. It cannot be doubted that she toiled in the fields, worked in a factory, kept house, and bore and helped raise their children up until recently. Perhaps this couple drove too hard in their attempt to get ahead. Unfortunately, the wife is no longer able, either physically or mentally, to help on the farm. She became mentally distressed some 13 years after the marriage and was hospitalized from time to time for treatment. She was in the hospital before her daughter was born and in fact was moved from the psychia-

tric ward for the birth of the child and later moved back to the psychiatric ward. Finally, in 1977 she attempted suicide when it became apparent she would again have to be hospitalized.

Appellee has recently acquired an 80-acre farm in his name as a trust estate. He also acquired another 80-acre farm and placed it in the name of their son. As previously stated, they owned personal property of the value of at least $300,000 at the time of the divorce.

The trial court awarded appellee $270,000 and appellant $30,000 out of the personal property. She received nothing for the two 80-acre farms mentioned above. The appellee was given possession of the house and one acre of land and custody of the children. This unfortunate woman has been divorced and her children taken from her through no fault of her own. This court and the trial court have paid no heed to Act 705 of 1979 which clearly states:

All marital property shall be distributed one-half (1/2) to each party unless the court finds such a division to be inequitable, . . .

The act further declares marital property means all property acquired by either spouse during the marriage. There are certain exceptions which are not involved in this case.

The appellee had no grounds for divorce, and the fact that appellant did not contest it did not give the court the right to grant a divorce. We have not yet adopted no-fault divorce in Arkansas.

The court of appeals did at least apply the principles of equity to the settlement of the personal property instead of accepting the harsh treatment of the appellant in the trial court and which is now adopted by this court. If I understand the meaning of equity, it has not been done by this court. I would at least award appellant $150,000 from the personal property.