Dale GRADY *v.* Norma GRADY

88-4                                                          747 S.W.2d 77

Supreme Court of Arkansas
Opinion delivered March 21, 1988

*W.J. Walker* and *Frank A. Poff, Jr.*, for appellant.

No brief filed for appellee.

STEELE HAYS, Justice. In this divorce case, Dale Grady has appealed from the chancellor's award of alimony and child support. Dale and Norma Grady were married in 1964. Six children were born of the marriage, with ages ranging from 21 to 10. Four minor children are still living at home.

Dale Grady received his law license in 1974. He had been working as a staff attorney for the Department of Correction but resigned from that position on March 28, 1986, when his gross income was approximately $1900 a month. He testified that at the time he resigned he and his wife were having serious marital problems, and two months later he moved out of the home.

When Mr. Grady moved out he began a solo law practice. He estimated his net income at $81 a week by totaling his gross receipts from June through November, 1986, subtracting his overhead, and dividing the balance by the number of weeks. Two days before the divorce hearing in November 1986 Mr. Grady filed for bankruptcy.

Norma Grady was forty-five years old at the time of the divorce. She had an eighth grade education and no special training. She spent most of the marriage as a housewife caring for the children. In March 1986 she began work cleaning houses and earned from $16 to $45 per week depending on the work. She had no savings or other assets.

Mr. Grady filed for divorce in August 1986, and a hearing was held in November 1986. The court granted the divorce and awarded custody of the children to Mrs. Grady. Mr. Grady was ordered to pay $600 a month child support and 80% of the minor children's medical and dental bills. He was ordered to pay $10 a year alimony.

## ·I

### *Child Support*

Appellant first argues the chancellor erred in setting child support at $600 a month when his earnings at the time of the divorce were $81 a week. He contends the court cannot base a support award on a party's earning capacity when in fact his earnings at the time of the divorce are considerably less.

There are circumstances under which it is appropriate to order child support based on a party's earning *capacity* rather than on actual earnings. 27C C.J.S. *Divorce* § 675 (1986); Annot., *Child Support — Exclusiveness or Adequacy*, 27 A.L.R. 4th 864 (1984). While in some jurisdictions the consideration of earning capacity is provided for by statute, in at least one jurisdiction it is the law irrespective of statute. *See In Re Marriage of Johnson*, 134 Cal. App. 3d 159, 184 Cal. Rptr. 444 (1982).

■ Under our statutes, while there is no specific provision identifying "earning capacity" as an element to be considered when ordering child support, it is nevertheless recognized as a factor. In determining the amount to be contributed for child support, the chancellor should consider the needs of the children, the resources of each parent, their respective ages, earning capacities, incomes and indebtedness, state of health, future prospects and any other factors that will aid the court in reaching a just and equitable result. *Barnhard* v. *Barnhard*, 252 Ark. 167, 477 S.W.2d 845 (1972); *Perkins* v. *Perkins*, 15 Ark. App. 82, 690 S.W.2d 356 (1985); *Guffin* v. *Guffin*, 5 Ark. App. 83, 632 S.W.2d 446 (1982).

■ We have not dealt with this issue directly, but elsewhere it has been held that the court may consider the fact that a supporting spouse voluntarily changes employment so as to lessen earning capacity and, in turn, the ability to pay alimony and child support. *Camp* v. *Camp*, 269 S.C. 173, 236 S.E.2d 814 (1977). A court may in proper circumstances impute an income to a spouse according to what could be earned by the use of his or her best efforts to gain employment suitable to his or her capabilities. *Klinge* v. *Klinge*, 554 S.W.2d 474 (Mo. 1977).

Determining the proper circumstances is sometimes difficult.

> On the one hand, the courts must not unduly interfere with the personal lives and career choices of individuals merely because they have been involved in a divorce. On the other hand, because there has been a divorce, the courts are thrust into the middle of the parties' personal lives in order to protect the interests of the minor children who are also unwilling participants in the divorce. [*Rohloff* v. *Rohloff,* 161 Mich. App. 766, 411 N.W.2d 484 (1987).]

A supporting spouse does not have total discretion in making decisions which affect the welfare of the family, if the minor children have to suffer at the expense of those decisions. *Id.* Deciding to establish one's own business or to voluntarily assume new financial burdens cannot take unquestioned precedence over the duty owed to a dependent family. *Weisner* v. *Weisner,* 238 Pa. Super. 488, 362 A.2d 287 (1976); *Henderson* v. *Lekvold,* 95 N.M. 288, 621 P.2d 505 (1980); *Klinge* v. *Klinge, supra; Rohloff* v. *Rohloff, supra.*

This is not to say there are not situations where an income reduction is reasonable and justifiable under particular circumstances. *See, e.g., Roberts* v. *Bockin,* 315 Pa. Super. 52, 461 A.2d 630 (1983); *Shaffran* v. *Shaffran,* 217 Pa. Super. Ct. 856, 270 A.2d 251 (1970). But the court must judge the facts and circumstances of each case and when under appropriate circumstances an income based on earning capacity is attributed to a spouse, the reviewing court will not find error.

The amount of child support to be awarded, if any, rests in the discretion of the court granting the divorce and is to be determined from the situation of the parties. *Perkins* v. *Perkins, supra;* Ark. Code Ann. § 9-12-312 (1987); [Ark. Stat. Ann. § 34-1211 (Supp. 1985)]. The chancellor's finding will not be disturbed on appeal in the absence of a showing of an abuse of discretion. *Mitchell* v. *Mitchell,* 2 Ark. App. 75, 616 S.W.2d 753 (1981).

Here, appellant resigned from a job that was providing support for his family. No explanation was offered, nor any reason given to justify the drastic change in circumstances. The

order for child support was made effective beginning the month after the hearing. The chancellor found appellant was a licensed attorney and had been employed in that capacity since 1974, that he was in good health and had the capability of earning sufficient income to pay $600 a month child support. The chancellor did not, however, find that appellant's reasons for leaving gainful employment were proper and not to evade his responsibilities. For that reason we remand to permit the record to be amplified on that point, as well as on the current financial status of the parties.

## II

### *Alimony*

Since we are remanding we will discuss the remaining issue for the guidance of the litigants and the chancellor. Mr. Grady contends the alimony award of $10 per year was error, because it allowed the court to "reserve jurisdiction" and defer a decision on alimony to a later time. He relies on *Ford* v. *Ford*, 272 Ark. 506, 616 S.W.2d 3 (1981). In *Ford* the chancellor made no alimony award but stated in the decree that he "declined to award alimony, but retained jurisdiction for the purpose of awarding alimony in the future should the needs of the defendant require modification of the decree." On appeal the court of appeals affirmed the chancellor, but this court reversed the court of appeals and allowed alimony of $50 per month. The *Ford* court interpreted Ark. Code Ann. § 9-12-312 (1987) [Ark. Stat. Ann. § 34-1211 (Supp. 1985)] as requiring that the decree of divorce allow or disallow alimony at the time of the divorce, and not retain jurisdiction for the purpose of granting alimony in the future based on changed conditions. That provision reads:

> When a Decree shall be entered the court shall make such order touching alimony of the wife or the husband and care of the children, if there be any, as from the circumstances of the case shall be reasonable . . . .

This court has sent mixed signals on the question whether a chancellor may enter a decree pursuant to which alimony may be made effective some time after the divorce has been entered. The statute makes it clear that the basic alimony decision is to be made when the divorce decree is entered. In

*Miller* v. *Miller*, 209 Ark. 505, 190 S.W.2d 991 (1945), a claim for alimony was raised some months after the decree of divorce. We denied the claim because there was no provision for it in the decree. However, the opinion contained this language:

> There was no language in the divorce decree of September 25, 1944, reserving the question of alimony for subsequent disposition. When Mrs. Miller failed, either to have monthly payments of alimony provided in the decree of divorce, *or to have the question of alimony reserved for further consideration*, she allowed the decree to become res judicata on the question of alimony . . . . [Our emphasis.]

Yet in the *Ford* case we held the chancellor had no power to retain jurisdiction or to treat alimony as a matter "reserved for further consideration."

It is inequitable to hold that a spouse who may be entitled to alimony is forever barred from receiving it because the spouse who should pay it cannot at the moment of entry of the decree. It is illogical to hold, as we do, that alimony may be raised or lowered upon a showing of changed circumstances but that the spouse who may have an obligation to pay alimony may not be made to do so when his or her circumstances permit it just because they did not permit it at the time the obligation was determined.

■ The answer to this problem lies in our holding here that, if either spouse is entitled to alimony, the chancellor must comply with the statute by making that decision when the decree is entered. If circumstances prevent the spouse who is to pay the alimony from being able to do so, then the court may recite that fact and decline to award a specific amount. Thereafter, if circumstances change in a way that will permit the payment of alimony, the party who has been determined to be entitled to it may petition the court. By following this procedure, the court will have complied with the statute without resorting to the sort of subterfuge inherent in awarding a nominal amount.

Except for the appellant's present financial circumstances, due in part to the number of dependent children, alimony would be appropriate from a number of considerations. See *Broyles* v. *Broyles*, 268 Ark. 120, 594 S.W.2d 17 (1980), for a detailed

discussion of factors bearing on alimony. There is ample cause to assume that appellant's prospects should improve, whereas, there is little likelihood that appellee's will change materially. We can conceive of no reason why, if appellant's circumstances improve materially, the court should not be free to consider alimony.

REMANDED.

HICKMAN, J., and GLAZE, J., dissent.

TOM GLAZE, Justice, concurring in part; dissenting in part. I dissent from that part of the majority's decision that affirms the chancellor's award of alimony in the sum of $10.00 per year. Obviously, the factors that justify an award of alimony were not existent here, *see Alexander* v. *Alexander*, 241 Ark. 741, 410 S.W.2d 136 (1967), or else the chancellor would have awarded a reasonable amount. The sole reason for the $10.00 award was to allow the chancellor to retain jurisdiction of this cause for the purpose of making an award of alimony in the future. The chancellor's action was clearly contrary to *Ford* v. *Ford*, 272 Ark. 506, 616 S.W.2d 3 (1981), where this court held that our statutory law requires the divorce decree to allow or disallow alimony *and that the decree cannot retain jurisdiction for the purpose of allowing or disallowing it in the future* based on changed conditions. The majority court now chooses to overrule *Ford*, and I disagree. Because a court's award of alimony is dependent upon statutory law, my view is that the *Ford* holding was correct, since it was based upon this court's clear interpretation of Ark. Stat. Ann. § 34-1211 (Supp. 1985), now compiled as Ark. Code Ann. § 9-12-312 (1987). *See Woods* v. *Woods*, 285 Ark. 175, 686 S.W.2d 387 (1985) (wherein court discusses statutory history for basis of alimony in Arkansas).

If the rule now is that the trial court may reserve the alimony question and leave it open for anytime in the future, that court surely needs to be required to give a reason for doing so. From my review of the record, I fail to see any reason for expecting that this appellant will ever be in a position to pay alimony. He became an attorney in 1974, and he apparently made as much as $22,800.00 per year, his gross earnings in 1985. Since June 1986, he has averaged $81.00 per week, and the parties are now in bankruptcy. The parties have four minor children, and their children have had medical and other problems, which pose a continuing stress on the

parents in raising them. Undoubtedly, appellee is in desperate need, as is reflected by her doing maid work and receiving food stamps. Even apart from the financial strife involved, she testified to acts of physical and mental abuse. Nevertheless, none of these factors add up to awarding alimony, and based upon the parties' history, an alimony award is not a realistic expectation for anytime in the foreseeable future. Thus, even if I could agree with the majority that a chancellor may reserve the question of alimony for the future, the power and authority to do so should not be unfettered and should not be extended to circumstances such as those we now have before us.

HICKMAN, J., joins in this opinion.