Rebecca J. MUNN *v.* Anthony R. MUNN

93-459                                                       868 S.W.2d 478

Supreme Court of Arkansas
Opinion delivered January 18, 1994

*J. G. Molleston,* for appellant.

*Woodward & Epley,* by: *David P. Price,* for appellee.

JACK HOLT, JR., Chief Justice. This case concerns the proper apportionment and utilization of a lump-sum workers' compensation disability settlement payment for child support, our guidelines for child support enforcement, and the extent of a chancellor's discretion in refusing to entertain evidence of alleged financial impropriety and irresponsibility on the part of parties in litigation. We find the appellant's arguments unpersuasive, and we affirm the chancery court's judgment.

The appellee, Anthony R. Munn, sustained an injury in 1981 which left him disabled. He and the appellant, Rebecca J. Munn, were married in 1983. A child, Kristie Renee Munn, was born of the union in 1984. On November 11, 1991, Mr. and Mrs. Munn entered into a written separation, child custody, and property settlement agreement. Subsequently, on November 20, 1991, the parties were divorced.

Under the terms of the agreement, which was incorporated in the divorce decree, Mr. Munn was required to pay $150 per month in child support. At the time of the divorce, Mr. Munn had no job-related income but received about $580 in monthly Social Security payments and, since 1981, about $700 in monthly workers' compensation total-disability benefits. The record reveals that the minor daughter, Kristie, received $30 per month from Social Security in separate payments based on Mr. Munn's total disability from his 1981 work-related injury.

In December 1991, less than a month after the divorce, Mr. Munn received a lump-sum workers' compensation settlement in the amount of $143,000. The matter had been pending since 1981, prior to the parties' marriage. According to Mr. Munn's testimony, he informed his attorney that he wanted to settle the case about five days before the actual settlement was accomplished. He acknowledged that, while he was married, he had told Mrs. Munn that he was not going to settle the workers' compensation case.

Upon receiving the lump sum settlement, Mr. Munn purchased a Dodge Stealth sports car for $26,150. He bought the house he had rented for the previous five years for about $50,000. Mr. Munn also paid $10,000 for a certificate of deposit to be used for his daughter's college education. He spent $34,600 acquiring Wal-Mart stock and the remaining $23,000 on various items.

In July 1992, following Mr. Munn's filing of a petition for regularizing visitation, Mrs. Munn filed her response and a petition for increase of child support, contending that there had been substantial changes in the circumstances affecting her former husband's ability to pay child support — chiefly regarding the amount of the workers' compensation lump-sum settlement and

the prior "material misrepresentation" on Mr. Munn's part concerning the likelihood of a settlement.

A hearing was held before the Columbia Chancery Court on December 2, 1992. In a letter opinion filed on December 30, 1992, the chancellor noted that Mr. Munn had stated that his Wal-Mart investment did not result in a substantial increase in his income. "However," the judge wrote:

> he can elect to invest that amount in securities or other forms which would result in a regular income to him. If that investment provided a 7% return he would increase his monthly income from $609.00 to $813.00. That monthly income would require child support in the amount of $200.00 per month pursuant to the Domestic Relations Chart. He presently pays $150.00 and Social Security pays $30.00 per month. Therefore, the monthly child support payment of defendant should be increased to $170.00 per month.

That figure was recorded in the court's order, which was entered on January 27, 1993. This appeal followed.

## I. Stewardship capacity

For her first point for reversal, Mrs. Munn contends that the chancellor should have taken into consideration evidence of the respective capacities for responsible stewardship of the $143,000 lump-sum settlement payment that her former husband received after the divorce. This issue was not preserved for appellate review.

At the hearing, Mrs. Munn's attorney endeavored to elicit testimony from her with respect to Mr. Munn's problems with handling financial matters. Mrs. Munn stated that her former husband would "take checks out of the middle of my checkbook," prompting counsel for Mr. Munn to raise a relevancy objection. Before the court ruled on the matter, Mrs. Munn's attorney made the following response:

> Well, Your Honor, child support is about how much of one person's money the Court is going to allow another person to administer, and that's why I'm asking these questions to give the Court evidence on who might be the

best person to be allowed to administer the money that's available to the family.

No attempt was made, beyond this rather general statement of purpose, to proffer any testimony on the subject. The trial court then sustained the objection, and Mrs. Munn acquiesced in the ruling, repeating the court's admonition to her not to answer the question about the checkbook: "Oh, don't answer it. Oh, excuse me."

■ An exclusion of evidence cannot be reviewed in the absence of a proffer showing what the evidence would have been. *Jackson* v. *Farm and Commercial Properties*, 284 Ark. 130, 680 S.W.2d 105 (1984). Further, acquiescence renders any error harmless. *Jim Halsey Co., Inc.* v. *Bonar*, 284 Ark. 461, 683 S.W.2d 898 (1985).

■ In any event, the question of fiscal responsibility had no actual bearing on the subject matter of the hearing: whether an increase in child support was warranted. The lump-sum payment was made in settlement of a workers' compensation claim that predated the parties' marriage by three years. The question of which person exercised the greater money-management skills during the course of a troubled marital relationship was simply irrelevant to the issue of changed circumstances.

## II. Settlement apportionment

In her second argument for reversal, Mrs. Munn urges that the chancellor abused his discretion in failing to apportion fifty percent of the lump-sum settlement as child support under Ark. Code Ann. § 11-9-110(d) (Supp. 1993) or, alternatively, in failing to apportion for periodic payments thirteen percent of the settlement amount, a figure drawn from the Per Curiam order, *In Re Guidelines for Child Support Enforcement*, 305 Ark. 613 (1991). Neither contention has merit.

### A. Ark. Code Ann. § 11-9-110(d)

Under the circumstances of the present case, Ark. Code Ann. §11-9-110 is inapplicable. That statute provides in relevant part:

(a) The right to compensation shall not be assignable and shall not be subject to garnishment, attachment, levy,

execution, or any other legal process except for child support obligations.

. . .

(c) On or after August 1, 1987, the commission shall forward monthly a computer tape, listing the name, address, and social security number, if available, on all persons for which the commission has established a file during the preceding month, to the Arkansas Child Support Enforcement Unit of the Division of Economic and Medical Services of the Department of Human Services. The computer tape shall also include the name of the workers' compensation carrier and the name of the employer. The same information shall be provided to individuals who apply for the information with the commission on an individual employee to an individual certifying that they have an interest in the child support obligations of the employee on whom the information is requested.

(d) Amounts withheld from weekly compensation benefits for child support obligations shall not exceed twenty-five percent (25%) of the benefit amount. Amounts withheld from a lump sum settlement on a joint petition for child support obligations shall not exceed fifty percent (50%) of the settlement amount.

. . .

(g) For purposes of this section, "child support obligations" is defined as only those support obligations which are contained in a decree or order of the chancery court or county court which provides for the payment of money for the support and care of any child or children.

The definition of "child support obligations" in subsection (g) encompasses the $150 monthly child support payments required of Mr. Munn by the divorce decree in the present case. Section 11-9-110(d) allows up to fifty percent of a workers' compensation lump-sum settlement to be withheld for child support obligations. However, the language in subsection (a) pertaining to the garnishment of benefits and "other legal process" necessarily implies a continuing court-decreed obliga-

tion as set forth in subsection (g), a failure of the obligated party to make regular payments, and an established right on the part of the entitled party to a withholding of the amount specified in a decree or order of the chancery or county court.

Subsection (c) provides a means for any party seeking enforcement of a child support obligation to receive information from the Workers' Compensation Commission about an obligated employee. The individual requesting the information must certify to the commission "an interest in the child support obligations of the employee on whom the information is requested." The information supplied is limited to the name, address, and Social Security number of the obligated employee, along with the names of the employer and the workers' compensation carrier, and may be used in an application to a court for enforcement through legal process.

The record indicates that, at the time of the divorce, Mr. Munn was receiving workers' compensation benefits in the amount of $163 per week. This, and other, income he received was used as the basis of the requirement in the divorce decree that Mr. Munn "pay the sum of $150.00 per month as reasonable child support." It appears that he made regular monthly support payments and was not delinquent. The parties' use of Mr. Munn's workers' compensation benefits in setting child support payments was entirely in keeping with the standards established by this court in the per curiam order, *In Re Guidelines for Child Support Enforcement, supra.*

Mrs. Munn, on the other hand, neither requested information on her husband under § 11-9-110(c) nor applied to any court, prior to the settlement, for the withholding of an amount for child support from Mr. Munn's $700 monthly benefits under § 11-9-110(d). Having knowledge of her husband's outstanding workers' compensation claim, she failed to reserve in the decree any interest in any future settlement that Mr. Munn might make. Consequently, Mrs. Munn has no right now to ask the court to decide how the settlement money should be spent by her former spouse.

Because the provisions of the divorce decree were in effect and Mr. Munn had not shown any recalcitrance in com-

plying with the child support requirement, the sanctions of § 11-9-110(d) were inappropriate. To read the statute as Mrs. Munn suggests would result in an anticipatory application clearly not intended by the legislature. The chancellor therefore did not err in failing to impose the penalty provided by subsection (d).

## B. Guidelines for Child Support Enforcement

Urging an application of our May 13, 1991 Per Curiam, *In Re Guidelines for Child Support Enforcement, supra,* to the present circumstances, Mrs. Munn argues in the alternative that the chancery court abused its discretion in failing to utilize thirteen percent of the lump-sum settlement as a basis for reassessing child support. The Per Curiam on which she relies stated that when the payor's income exceeds the amount shown on the extended child support chart, the court should disregard the chart and, where one dependent is involved, use the figure of thirteen percent of the payor's monthly or weekly income (including Workers' Compensation payments) to establish the amount of support.

The extent to which Mr. Munn's income or earning capacity might have been affected as a result of his settlement was certainly relevant to the chancery court's determination of whether a material change in circumstances had occurred which warranted an increase in child support. Here, the chancellor found that changed circumstances indeed required an increase, and he consulted the child support chart to obtain the appropriate figure. Of course, use of the chart and the criteria employed for deviating from it is not obligatory; reference to the chart, however, is mandatory. *Stewart* v. *Winfrey,* 308 Ark. 277, 824 S.W.2d 373 (1992).

The chancellor calculated the amount of increased support on the basis of that portion of the lump-sum settlement represented by the Wal-Mart stock, applying a hypothetical investment yield and employing the child support chart. In his opinion letter, quoted earlier, the chancery judge rounded upward to $35,000 the $34,600 Mr. Munn had invested in Wal-Mart stock and posited a seven-percent return, thus arriving at a projected increase in monthly income from $609 to $813. Then, referring to the child support chart, the chancellor noted that an increase in support payments from $150 to $200 per month would be

required. Because Mr. Munn was making regular payments of $150 monthly, while Social Security was providing $30 monthly, the court found that Mr. Munn's obligation should be increased to $170 per month to reach the $200 figure set by the chart.

Because Mrs. Munn contends that the chancellor erred in setting an inadequate child-support award, it was her duty to present sufficient evidence, argument, and citation of authority to prove her assertion, particularly with reference to her claim regarding thirteen percent of the settlement. *Thurston* v. *Pinkstaff, supra*. Mrs. Munn has failed to show that the chancellor abused his discretion in estimating that a seven-percent return on Mr. Munn's Wal-Mart stock would raise his monthly income from $609 to $813 or in determining, with reference to the child support chart, that the monthly payment should be $200. She has also failed to show that she was entitled to any portion of an award that had been made for a disability suffered prior to her marriage with Mr. Munn.

In addition to the data on the Wal-Mart stock, the chancery court had available for consideration evidence of Mr. Munn's poor state of health (lupus contracted from a blood transfusion administered during surgery for his work-related injury, chronic back pain, and arthritis) and lack of earning capacity. State of health and earning capacity are factors to be considered in determining the amount of child support. *Grady* v. *Grady*, 295 Ark. 94, 747 S.W.2d 77 (1988).

We noted earlier that, aside from court-ordered support, Mr. Munn has attempted to provide for his daughter's higher education by setting aside a $10,000 certificate of deposit, which further evidences his continuing commitment to ensure his child's future security.

For these reasons, we cannot say that the chancellor abused his discretion.

Affirmed.