

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-13-591

| | | |
|---|---|---|
| | | **Opinion Delivered** November 13, 2013 |
| ROYCE ARY | | APPEAL FROM THE SALINE |
| | APPELLANT | COUNTY CIRCUIT COURT |
| | | [No. 63DR-12-383-1] |
| V. | | HONORABLE BOBBY D. |
| | | McCALLISTER, JUDGE |
| SONYA ARY | | |
| | APPELLEE | AFFIRMED |

**LARRY D. VAUGHT, Judge**

Appellant Royce Ary appeals from the January 7, 2013 Supplemental Order to Decree of Divorce entered by the Saline County Circuit Court, ordering Royce to pay alimony to appellee Sonya Ary. Royce's appeal challenges the trial court's alimony award in a two-point attack. He argues that the trial court erred as a matter of law when it granted Sonya alimony after it entered the divorce decree. He also challenges the trial court's award of alimony, including the amount awarded. We affirm.

Sonya and Royce were married in 1993. On April 2, 2012, Sonya filed a complaint for divorce, seeking custody of the parties' two minor children, L.A.1 (DOB 3-5-95) and L.A.2 (DOB 4-25-01), child support, a division of property, and alimony. A temporary hearing was held on May 8, 2012. At the hearing, the evidence revealed that Royce was a veteran with a seventy-five-percent disability rating, for which he received a monthly disability payment of

$1512. Royce was also employed with the federal government with net monthly earnings of approximately $3200.

During the majority of their marriage, Sonya was a stay-at-home mom; however, more recently she began working as a receptionist earning approximately $2100 per month. She also served as an "on-call" bartender for the Peabody hotel. Testimony demonstrated that Sonya and the children were living in the marital home, that the monthly mortgage payment for the home was approximately $1200, and that Royce continued to make the mortgage payment after the parties separated. He also continued to make the monthly payment on L.A.1's vehicle. Both parties testified about significant marital debt, which included the mortgage, three vehicles, a travel trailer, a personal loan, several credit-card balances, and a loan on a retirement account. At the conclusion of the temporary hearing, the trial court entered an order, dated May 22, 2012, that among other things, awarded Sonya primary physical custody of the children and Royce visitation; awarded Sonya child support in the amount of approximately $445 biweekly; ordered Royce to continue to make the mortgage payment and L.A.1's car payment; and ordered Royce to pay for health insurance for the children.

The parties' divorce hearing was held on August 7, 2012. At this hearing, there was testimony that Royce had approximately $40,000 in his retirement account, while Sonya had less than $80 in hers. There was evidence that the parties' home appraised at $156,000, but the mortgage balance was almost $155,000. The evidence revealed that both parties were driving vehicles that had little-to-no equity in them. And the parties reported that they were unable to agree on a property settlement.

SLIP OPINION

Among other issues, Sonya testified that she was in need of alimony because her monthly expenses exceeded her monthly income by over $1200. She stated that her prior work history included working at the mall, at her church, as a bartender, and as a receptionist. It was her opinion that Royce had a superior earning capacity because he had a military background and was a veteran, currently held a federal job, was more educated, and learned a trade. Royce testified that he could not afford to pay Sonya alimony. He said that since the temporary hearing, when he was ordered to pay child support, the mortgage, L.A.1's car payment, health insurance for the children, his debts, and his living expense, he had amassed credit-card debt.

At the conclusion of the divorce hearing, the trial court granted Sonya a divorce, awarded Sonya custody of the children and child support, and awarded Royce visitation. The court told the parties they had thirty days to negotiate a property settlement, and if they failed, the court would order the sale of their property. The court then stated:

> All issues with regard to alimony, attorney's fees and disbursements [sic] of those debts will be made upon the sale or settlement. I'm holding those issues in abeyance.
>
> The specific property and indebtedness with which the parties leave a marriage is a factor that a Court can utilize in determining alimony and attorney's fees, and I will be using all of that information in making that ruling.

Several months later on November 14, 2012, the trial court entered the divorce decree that set forth the oral findings of the trial court and added the amount of monthly child support to be paid by Royce—approximately $1000. In the decree, the trial court also stated that the parties had executed a property settlement agreement (PSA) that provided for the disposition of the parties' property, debts, insurance, and other matters. Relevant to this appeal, the parties' PSA provided that Royce would receive the marital home and the debt associated with it; each

3

party would receive their own vehicle and the debt associated with it; Royce would receive L.A.1's vehicle and the debt associated with it; and Sonya would receive Royce's retirement account. The final paragraph of the PSA provided:

> At the August 7, 2012 final divorce hearing the Court ruled that [Sonya's] request for alimony and attorney's fees would be held in abeyance, pending a settlement agreement or a commissioner's sale if a settlement agreement were not reached. Because the parties are not able to agree as to alimony and attorney's fees, the parties agree that the Court should make a finding as to a ruling on [Sonya's] request for alimony and attorney's fees.

A third hearing—limited to the issues of alimony and attorney's fees—was held on December 12, 2012. There, Sonya testified that she received Royce's retirement account as part of their PSA. In return, Royce received all of the parties' marital property, excluding some household items. Sonya stated that she was receiving child support for the children, but that support for L.A.1 would terminate in five months. She said that her monthly income was now $2200 and that she had incurred over $9000 in attorney's fees as a result of the divorce. She added that she had assumed responsibility for the children's medical insurance. Royce testified once again that he did not have any disposable income to pay alimony to Sonya after paying his debts, expenses, and child support. Later that day, the trial court issued a letter opinion:

> After reviewing the evidence and all other matters in this case; and based upon the factors required to be considered under the laws of the State of Arkansas, the Court finds that [Royce] should be required to pay alimony to [Sonya] in the sum of $750.00 per month for five (5) years and at the conclusion of five years, reduced to $500.00 per month for a period of five (5) years. This alimony payment would be terminated upon death of [Royce] or re-marriage of [Sonya] or other change of circumstances allowed by law. I am denying [Sonya's] request for attorney's fees.

On January 13, 2013, the trial court entered a supplemental order to the decree of divorce restating the findings set forth in its letter opinion. It is from this order that Royce appeals.

SLIP OPINION

One of Royce's points on appeal is that the trial court erred as a matter of law when it granted Sonya alimony *after* it entered the divorce decree. For support he cites Arkansas Code Annotated section 9-12-312(a)(1) (Repl. 2009), which states: "[w]hen a decree is entered, the court shall make orders concerning the alimony of the wife . . . and the care of the children, if there are any, as are reasonable from the circumstances of the parties and the nature of the case." Royce also cites two cases—*Grady v. Grady*, 295 Ark. 94, 99, 747 S.W.2d 77, 80 (1988), and *Ford v. Ford*, 272 Ark. 506, 517, 616 S.W.2d 3, 9 (1981), which he argues stand for the propositions that section 9-12-312 mandates that alimony decisions be made when the divorce decree is entered and that a trial court does not have the power to retain jurisdiction or to treat alimony as a matter "reserved for further consideration."

However, we cannot reach the merits of this argument because Royce did not raise it below. In *Edwards v. Edwards*, 2009 Ark. 580, at 7–8, 357 S.W.3d 445, 449–50, our supreme court held that the trial court's authority to reserve jurisdiction and defer an alimony decision after a divorce decree has been entered, under section 9-12-312, is not an issue of subject-matter jurisdiction. Therefore, the issue must be raised to the trial court in order to preserve the argument for appeal. *Edwards*, 2009 Ark. 580, at 8, 357 S.W.3d at 450. This holding applies to the case at bar. Royce did not raise the issue of the trial court's authority under section 9-12-312 to the trial court. Therefore, Royce failed to preserve the argument for appeal.

Royce also challenges the award of alimony, including the amount of the alimony awarded by the trial court. A trial court's decision regarding alimony is a matter that lies within the court's sound discretion and will not be reversed absent an abuse of that discretion. *Spears*

5

*v. Spears*, 2013 Ark. App. 535, at 5. An abuse of discretion means discretion improvidently exercised, i.e., exercised thoughtlessly and without due consideration. *Elliott v. Elliott*, 2012 Ark. App. 290, at 4, ___ S.W.3d ___, ___.

The purpose of alimony is to rectify the economic imbalance in the earning power and standard of living of the divorcing parties, in light of the particular facts of each case. *Spears*, 2013 Ark. App. 535, at 5–6. The primary factors to consider are the financial need of one spouse and the other spouse's ability to pay. *Id.* at 6. Other factors include the financial circumstances of both parties; the couple's past standard of living; the value of jointly owned property; the amount and nature of the income, both current and anticipated, of both parties; the extent and nature of the resources and assets of each party; the amount of each party's spendable income; the earning ability and capacity of both parties; the disposition of the homestead or jointly owned property; the condition of health and medical needs of the parties; and the duration of the marriage. *Id.* If alimony is awarded, it should be set in an amount that is reasonable under the circumstances. *Id.*

Royce argues on appeal that the trial court abused its discretion in granting Sonya alimony, claiming that the court failed to properly consider the primary and secondary factors for determining alimony. We disagree. As set forth above, the primary factors to be considered in awarding alimony are the needs of one party and the ability of the other party to pay. *Spears*, 2013 Ark. App. 535, at 6. The evidence presented demonstrated that Sonya has a need for income. She was a housewife for the majority of the parties' eighteen-year marriage. There is no evidence of Sonya's education level, and she has had no vocational training or career. Evidence

showed that Sonya's monthly expenses exceeded her monthly income. Therefore, she has the need for income. Additionally, the evidence demonstrated that Royce has the ability to pay. He has a military background, is a veteran, has more education than Sonya, and has learned a trade. He is seventy-five-percent disabled, which entitles him to monthly disability, and he is gainfully employed with the federal government.

Evidence of the secondary factors further supports the trial court's alimony award. The parties were married for eighteen years, during which Royce provided primary financial support for the family. There was evidence that during their marriage the parties enjoyed a "comfortable" standard of living, but it was shown that significant debt was accumulated as a result. As part of the dissolution of the marriage, both parties assumed a portion of the marital debt. And while Royce assumed a larger portion of the marital debt, he also received all of the marital assets, which include the home, two vehicles (his and L.A.1's), firearms, a travel trailer, and two ATVs. Despite Royce's disability, he has a history of employment. Sonya's relatively good health is support for the trial court's limited period of alimony. For all of these reasons, we hold that the award of alimony and the amount of alimony awarded by the trial court was reasonable under the circumstances. *Russell v. Russell*, 2013 Ark. 372, at 9, ___ S.W.3d ___, ___ (holding that it is not an abuse of discretion to make an award of alimony that is reasonable under the circumstances). Therefore, we hold that the trial court did not abuse its discretion in awarding alimony to Sonya.

Royce maintains that reversal is required because (1) the trial court abused its discretion in awarding alimony to Sonya because there was an unequal distribution of property (he assumed

the marital debt and she received his $40,000 retirement account); (2) the court considered his fault in the divorce as part of the alimony decision; (3) after their separation Sonya's expenses were not reasonable because she was living a lifestyle beyond her means;[1] and (4) after their separation he had to use credit cards to pay child support, the mortgage on the house, and his monthly expenses.

However, the record reflects that the parties agreed to the distribution of the marital assets and debt. Further, nothing in the record indicates that the trial court considered Royce's fault in awarding alimony. As for Royce's remaining assertions, we note that the appropriateness of an alimony award is determined in light of the facts in each case, and the trial court is in the best position to view the needs of the parties in connection with an alimony award. *Stuart v. Stuart*, 2012 Ark. App. 458, at 9, ___ S.W.3d ___, ___. The trial court in this case found that Sonya was entitled to alimony. In our review, we hold that the trial court applied the correct legal standard, found facts that were supported by the evidence presented, and did not abuse its discretion in making the award. Accordingly, we affirm.

Affirmed.

WYNNE and GLOVER, JJ., agree.

*Tyson K. Spradlin*, for appellant.

---

[1]For support, Royce cites evidence that Sonya took two vacations and was spending $230 per month at the hair and nail salon.

8