

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-14-73

| | | |
|---|---|---|
| TIMOTHY BALL | | Opinion Delivered   AUGUST 27, 2014 |
| | APPELLANT | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT [NO. DR-11-665] |
| V. | | |
| SHELIA BALL | | HONORABLE ANNIE POWELL HENDRICKS, JUDGE |
| | APPELLEE | AFFIRMED |

## KENNETH S. HIXSON, Judge

This is a domestic proceeding between appellant Timothy Ball and appellee Shelia Ball, who married in 1988 and divorced on October 23, 2012. Subsequent to their divorce, Timothy filed a motion to cite Shelia for contempt, alleging that Shelia had violated the trial court's orders. After a hearing, the trial court entered an order on October 1, 2013, finding that Shelia did not willfully violate the court's orders and was not in contempt. Timothy now appeals, arguing that the trial court erred in failing to find Shelia in contempt. We affirm.

The parties separated and Shelia filed for divorce in August 2011. After that, Shelia continued to reside in the marital home with the parties' adult daughter, Shawna. In January 2012, Shelia was diagnosed with breast cancer.

On June 28, 2012, the trial court entered an agreed temporary order. In that order, the parties agreed that Timothy would continue to pay the mortgage on the marital home,

SLIP OPINION

as well as the costs of the utilities and yard work. Timothy also agreed to make Shelia's car payment and pay temporary alimony of $1600 per month. The temporary order directed Timothy not to visit the marital home except by appointment and as agreed between the parties and their respective counsel.

The October 23, 2012 divorce decree awarded Timothy the marital home and held him responsible for the mortgage. The decree ordered Timothy to pay Shelia $10,000 for her equitable interest in the home. Timothy was also ordered to pay $2500 in monthly alimony. The parties' personal property was divided in accordance with an attached exhibit. Shelia was given until November 30, 2012, to move out of the marital home, and she was ordered to leave any of Timothy's personal items in the house. The divorce decree further provided that each party was enjoined from injuring or harassing the other party.

Timothy filed a motion to cite Shelia for contempt on January 18, 2013. In Timothy's motion, he alleged that upon repossession of the home he discovered that it had been left in disarray and in disrepair. Timothy further alleged that Shelia had failed to leave many of his items of personal property awarded to him by the divorce decree. Timothy asked that Shelia be held responsible for his costs to repair the home, and also that she be ordered to replace or pay for the replacement value of his missing personal items.

At the hearing on Timothy's contempt motion, Timothy presented numerous photographs showing the condition of the house both before the parties' separation and after he reassumed possession. According to Timothy, the house was in good condition during the parties' marriage, but had been left by Shelia in a state of filth and disrepair.

Timothy gave various examples of the problems he allegedly encountered when he took possession of the house after the parties' divorce. Timothy testified that there were dog feces and urine throughout the house, some of which had been covered up by rugs. Timothy further testified that the swimming pool had not been maintained and had a torn liner. According to Timothy, the yard had not been maintained and was overgrown. He stated that the carpets were severely stained and that there was trash strewn about the house. Timothy further testified that the two refrigerators were in disrepair and that one of them had been unplugged with food left in it. Timothy introduced a list of the expenses he allegedly incurred in cleaning and repairing the house, which totaled more than $19,000.

Timothy also testified that many of his personal items were missing from the house. He stated that an expensive grill was missing, and that the garage had been ransacked. Timothy further stated that someone had taken all of his guns and ammunition. Timothy submitted a list of all of his items of personal property that were allegedly missing from the house, and he estimated the total replacement cost at around $16,700.

Shelia testified that many of the problems with the house were present before the parties' separation. She said that the carpets were stained, the upstairs air conditioner did not work, and there were plumbing issues. Shelia stated that at one time she prevented the landscaper from coming into the backyard because a ladder was missing, but that the landscaper returned the ladder and she allowed him access after that. As for the pool, Shelia stated that Timothy had shut it down when they separated and that she did not know how to maintain it. Shelia denied intentionally leaving the house in disarray or doing anything to

3

SLIP OPINION

diminish the value of the house, but she did state that her move was very difficult due to her battle with breast cancer. Shelia stated that when she moved out of the house it was not in the poor condition depicted in Timothy's photographs.

Shelia denied taking any of Timothy's personal property, except for a table and a turkey fryer that were accidentally taken by the movers. Shelia stated that the parties had separated a few times in the past, and that on each occasion Timothy took guns and other possessions with him. Shelia did not know whether the personal items claimed by Timothy were in the house on the date of their final separation, but she maintained that she did not have them.

The parties' daughter, Shawna, corroborated Shelia's testimony. Shawna testified that neither she nor her mother took any of her father's personal belongings, and she also stated that the house needed significant repairs at the time of her parents' separation.

On October 1, 2013, the trial court entered an order finding that Shelia's behavior did not rise to the level of willful disobedience, and it declined to find Shelia in contempt. The trial court did not order Shelia to reimburse Timothy for any of his alleged repairs or missing items of personal property, although the court did order Shelia to return to Timothy his table and his turkey fryer.

In this appeal, Timothy argues that on these facts the trial court erred in failing to find Shelia in contempt. Timothy argues that by failing to maintain the house and by leaving it in an extremely disorderly and unclean condition, she violated the court's order to refrain from injuring the other party. Timothy also contends that Shelia willfully violated the divorce

4

SLIP OPINION

decree by failing to leave him the items of personal property awarded to him by the decree. He argues that Shelia should be held in contempt and ordered to pay for the consequences of her willful disobedience.

Contempt may be established when the offending party willfully disobeyed a valid order of a court. *Bass v. Bass*, 2011 Ark. App. 753, 387 S.W.3d 218. Although Timothy's motion for contempt filed below did not specify whether he was asking that Shelia be held in criminal or civil contempt, it is clear that he was asking for civil contempt. It has long been the rule in Arkansas that, in certain cases, a process for contempt may be used to effect civil remedies, the result of which is to make the innocent party whole from the consequences of contemptuous conduct. *Omni Holding & Dev. Corp. v. 3D.S.A., Inc.*, 356 Ark. 440, 156 S.W.3d 228 (2004). Civil contempt protects the rights of private parties by compelling compliance with orders of the court made for the benefit of private parties. *Bass, supra.* The standard of review in civil contempt proceedings is whether the trial court's finding was clearly against the preponderance of the evidence. *Flippen v. Jones*, 2014 Ark. App. 220.

The trial court found that Shelia did not willfully disobey its orders, and on this record we hold that this finding was not clearly against the preponderance of the evidence. This case turned largely on the credibility of the witnesses, and the trial court stated in its order that it was convinced that Shelia's testimony was more credible than Timothy's. In reviewing a trial court's findings, we give due deference to the court's superior position to determine the credibility of the witnesses and the weight to be accorded their testimony. *Chitwood v. Chitwood*, 2014 Ark. 182, 433 S.W.3d 245. Although Timothy alleged that Shelia had left

the house in disrepair and disarray, Shelia testified that many of the maintenance issues were present prior to the parties' separation. Moreover, Shelia disputed the severity of the condition of the house upon her departure, and she maintained that her illness made the move very difficult for her. Shelia stated that she did not intentionally leave the home in a state of disarray, nor did she purposely take any of Timothy's personal belongings. The two items that were accidentally taken by Shelia during her move were ordered to be returned to Timothy. Shelia denied being in possession of any other items. Leaving credibility determinations to the trial court, as we must, we conclude that the trial court did not err in refusing to find Shelia in contempt.

Affirmed.

WYNNE and BROWN, JJ., agree.