
# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-14-533

| | | |
|---|---|---|
| DON DAVIS | | Opinion Delivered: April 13, 2016 |
| | APPELLANT | |
| | | APPEAL FROM THE POPE COUNTY CIRCUIT COURT [NO. DR-2012-417] |
| V. | | |
| CHERYL DAVIS | | |
| | APPELLEE | HONORABLE DENNIS CHARLES SUTTERFIELD, JUDGE |
| | | AFFIRMED; MOTION TO STRIKE DENIED |

**WAYMOND M. BROWN, Judge**

In this divorce case, appellant Don Davis argues that the circuit court erred in dividing his and appellee Cheryl Davis's property and in failing to award him attorney's fees. We affirm the circuit court's rulings.[1]

I. *Background*

Don and Cheryl were divorced in 2014. During their nineteen-year marriage, they owned a pawn shop, which they sold in 2007. After the sale of the pawn shop, Don did not work outside the home. He drew Social Security and was apparently disabled.

Cheryl, who is fifteen years younger than Don, continued to work after the pawn shop was sold. In 2007, she and her mother, Helen McCoy, purchased a business called

---

[1] On certification, our supreme court ruled that the decree in this case was a final, appealable order. *Davis v. Davis*, 2016 Ark. 64. The case was then remanded to our court for a decision on the merits.

Bethany's Design Center for $180,000. Each of them paid $25,000 down, with the balance of the purchase price to be paid in installments of $5,000 per month to the former owner, Ms. Self. Later on, Cheryl and Helen invested another $12,500 apiece in the business. They considered themselves equal partners in Bethany's and both worked at the shop. Cheryl paid herself $350 per week as wages, but she and Helen agreed that Helen's wages would be deferred to a later date. Helen worked at Bethany's for four years.

Bethany's generated sufficient revenue to pay expenses, repay Ms. Self, and repay Cheryl's and Helen's capital investments. Nevertheless, according to Cheryl, the economy was performing poorly and the business was expensive to operate. There was evidence the company's finances were buttressed by receiving $100,000 in insurance proceeds following a 2009 fire and by Cheryl's using her and Don's credit card and line of credit for extra revenue during the shop's "slow months."

At some point in 2012, Cheryl and Don separated, and in July 2012, Cheryl sued Don for divorce. The court entered a temporary order giving Cheryl possession of Bethany's but prohibiting the disposal of marital property. Despite this order, Cheryl decided that Bethany's should close, and she began selling the store's inventory at reduced prices in late 2012.[2] By early 2013, the business had sold approximately $220,000 worth of inventory for $98,000. Upon consulting with an accountant, Cheryl used $67,000 of the sale proceeds to pay Helen for her four years of deferred salary. Cheryl and Helen testified that they arrived at the $67,000 figure by calculating the amount that Cheryl had been paid over the same

---

[2] Don asked that Cheryl be held in contempt for violating the agreed temporary order. The court refused to do so and instead ordered Cheryl to make Bethany's financial records available to Don.



time period: approximately $1,400 per month for 48 months.

Following the sale, Bethany's was left with about $5,000 worth of inventory and some debt on Cheryl and Don's credit card and line of credit. The remainder of the $98,000, save a few hundred dollars, went toward Bethany's final operating expenses.

After liquidating Bethany's, Cheryl moved from Pope County to Eureka Springs. In May 2013, she bought a business there with the help of a $45,000 loan from Helen. She also signed a contract to buy a house, for which Helen loaned her $5,000 as earnest money.

A month later, in June 2013, a trial was held on the parties' property-division issues. Don asked for an unequal division of marital property in his favor, claiming that Cheryl had dissipated marital assets by selling Bethany's inventory for less than fifty percent of its value, then paying $67,000 of the sale proceeds to Helen. Don also informed the court that Cheryl had possibly acquired marital property in Eureka Springs, and he asked that a substantial part of a large firearm collection be declared his separate, non-marital property.

Following the trial, the circuit court entered an order that essentially divided all marital property equally. The court declined to make an unequal division of marital property based on Don's allegation that Cheryl had dissipated Bethany's assets. The court found that Bethany's "did not do that well" and was a "failure," plus the court credited Helen's testimony that the $67,000 she received from the proceeds of Bethany's inventory was compensation for her investment in and work at Bethany's. However, the court found fault with Cheryl's making the $67,000 payment to Helen before paying off Bethany's debts. The decree therefore ordered Cheryl to pay two-thirds of the debt on her and Don's credit card and $15,000 on their line of credit.

With regard to Cheryl's Eureka Springs business and home, the court found that there was no equity to divide in those properties because Cheryl had acquired them solely with borrowed money. The court did, however, hold Cheryl fully responsible for the debt on the properties. As for Don's claim that part of the gun collection was his separate property, the court noted Don's testimony on this issue lacked credibility, and the court ruled that all firearms proven by the evidence were marital property.[3] Finally, each party was ordered to pay his or her own attorney's fees. Don filed this appeal.[4]

## II. *Standard of Review*

We review divorce cases de novo.[5] However, we will not reverse the circuit court's findings of fact unless they are clearly erroneous.[6] Findings are clearly erroneous when the reviewing court, on the entire evidence, is left with a firm conviction that a mistake has been committed.[7] We give due deference to the circuit court's superior position to determine the credibility of the witnesses and the weight to be given their testimony.[8] We

---

[3] The court did award Don one gun safe that Cheryl had given to him as a gift.

[4] The court also ordered a sale of the parties' marital home, with the proceeds divided equally; ordered the parties to equally divide the remaining monthly payments owed to them on the sale of rental property; ordered the remaining assets of Bethany's to be sold with the proceeds divided equally; and ruled that Don would receive foreign currency worth $80,000 as his sole property.

[5] *Fields v. Fields*, 2015 Ark. App. 143, 457 S.W.3d 301.

[6] *Id.*

[7] *Webb v. Webb*, 2014 Ark. App. 697, 450 S.W.3d 265.

[8] *Fields*, *supra*.



will not substitute our judgment on appeal as to what property interest each party should have; we will decide only whether the court's order is clearly wrong.[9]

### III. *Division of Property*

At the time a divorce decree is entered, the circuit court shall distribute all marital property one-half to each party unless the court finds such a division to be inequitable.[10] There is a presumption that an equal division is fair and equitable.[11] A circuit court has broad powers to distribute property in a divorce case, and it need not do so with mathematical precision.[12] The purpose of our property-division statute is to enable the trial court to make a division that is fair and equitable under the circumstances.[13] The court is vested with a measure of flexibility in apportioning the total assets, and the critical inquiry is how the total assets are divided.[14]

### A. Request for Unequal Property Division

Don argues first that the circuit court should have made an unequal division of marital property in his favor because Cheryl fraudulently dissipated marital assets. He cites the fact that Cheryl sold Bethany's assets for less than half their value, paid Helen $67,000 from the

---

[9] *Id.*

[10] Ark. Code Ann. § 9-12-315(a)(1)(A) (Repl. 2015).

[11] *Webb*, *supra*.

[12] *Id.*

[13] *Barron v. Barron*, 2015 Ark. App. 215.

[14] *Jones v. Jones*, 2014 Ark. 96, 432 S.W.3d 36.

sale proceeds, then received a $50,000 loan from Helen to buy a home and business in Eureka Springs. Don correctly states that an unequal distribution of property or other compensatory measure may be justified based on one party's fraudulent transfer or dissipation of marital assets.[15]

Don begins by challenging the legitimacy of the $67,000 payment to Helen. We see no basis for reversal on this point. The testimony demonstrated that Helen worked at Bethany's for four years with no salary and that both she and Cheryl agreed from the beginning of their endeavor to defer her salary to a later date. Cheryl and Helen also testified that the $67,000 figure was based on the same $350 per week that Cheryl had been paid over a four-year period. Significantly, the trial judge found that Helen's testimony on this point was credible, and we defer to his superior position to determine a witness's credibility.[16] Under these circumstances, the evidence supports the court's finding that the $67,000 payment to Helen was legitimate compensation for her participation in the Bethany's enterprise.

Don argues next that Bethany's was a successful business, and he takes issue with the language in the decree that Bethany's "did not do that well" and was "a failure." While we agree that characterizing the business as a failure may have been an overstatement, we do not view each of the court's findings in isolation.[17] Rather, we determine whether all factors

---

[15] *See Skokos v. Skokos*, 332 Ark. 520, 968 S.W.2d 26 (1998); *Freeman v. Freeman*, 2013 Ark. App. 693, 430 S.W.3d 824.

[16] *Fields*, *supra*.

[17] *See Boudreau v. Pierce*, 2011 Ark. App. 457, 384 S.W.3d 664.

considered in the aggregate support the court's ruling.[18] In this case, there was evidence that Bethany's was operating in a difficult economic climate and that at least part of its ability to meet expenses was facilitated by the $100,000 in fire-insurance proceeds and by Cheryl's use of her and Don's credit card and line of credit.

For his final argument on this point, Don contends that other reasons justify an unequal division of property in his favor. He cites Arkansas Code Annotated section 9-12-315(a)(1)(A), which sets forth various factors that a court must take into account in making an unequal distribution of marital property. These include the parties' health, income, and employability, among others. Don contends that because he is older than Cheryl, receives social-security benefits, and is disabled, an unequal distribution in his favor was warranted.

As a threshold matter, Don did not develop this argument in circuit court nor obtain a ruling on it. The argument is therefore waived on appeal.[19] In any event, we conclude that the court's overall division of marital property was equitable, especially in light of the presumption in favor of equal distribution of marital assets.[20]

### B. Eureka Springs Property

Don argues next that the circuit court erred in failing to grant him an interest in the home and business that Cheryl purchased in Eureka Springs approximately one month before trial. For the following reasons, we do not agree with Don that reversal is warranted.

---

[18] *Id.*

[19] *See Colquitt v. Colquitt*, 2013 Ark. App. 733, 431 S.W.3d 316.

[20] *Webb, supra.*

We observe at the outset that the Eureka Springs business and the real-estate contract undisputedly qualified as marital property. Assets acquired after separation but prior to divorce are marital property.[21] In particular, we have held that a real-estate contract, signed before a divorce decree is entered, is an enforceable right that is classified as marital property.[22] However, the evidence at trial was that Cheryl acquired the business and made her down payment on the house with borrowed money. The circuit court therefore noted that there was no divisible equity in either property. As a result, the court awarded the properties to Cheryl but held her responsible for all of the indebtedness thereon.

On the record before us, we cannot say that the circuit court clearly erred in its ruling. The proof, as developed at trial, does not reveal the existence of any equity in the Eureka Springs properties. Consequently, the court recognized the impracticality of making a division where there was nothing to divide.[23] Moreover, the court saddled Cheryl with all of the debt on the properties. The critical inquiry is how the total assets are divided.[24] Applying this standard, there is no reversible error.

### C. Gun Collection

Much of the controversy at trial involved a large gun collection that was valued at $67,627. Don asked the court to award at least some of the guns to him as his separate

---

[21] *O'Neal v. O'Neal*, 55 Ark. App. 57, 929 S.W.2d 725 (1996).

[22] *Page v. Anderson*, 85 Ark. App. 538, 157 S.W.3d 575 (2004).

[23] *See* Ark. Code Ann. § 9-12-315(a)(1)(A), which requires marital property to be "distributed."

[24] *Jones*, *supra*.

property. The court instead ruled that all of the guns in evidence were marital property, except for one gun safe that Cheryl had given Don.

On appeal, Don argues that the circuit court clearly erred in failing to award him any guns as his separate property. However, it is apparent from the record that the evidence on this issue was in utter conflict. Don testified that he had received some of the guns as gifts and that he had given his entire gun collection to his daughter Candace in 2010. His testimony was somewhat corroborated by a family friend.[25] However, Don's testimony conflicted with his own trial exhibits, which indicated that he had given Candace some, but far from all, of his guns.

According to Cheryl, Don brought home 156 guns in 2007 after the pawn shop closed—a business in which she and Don were equal shareholders. She stated that she was unaware that Don had given the firearms to anyone and that, when she left the marital residence, the guns were still there as far as she knew.[26]

It was Don's burden to prove what guns were his separate property.[27] Further, the conflicting proof on this issue was for the trial court to resolve.[28] The court expressly found that Don's testimony on this matter was not credible, and we defer to the court's superior

---

[25] Candace did not testify.

[26] Cheryl testified that Don owned three to five guns when they got married, but the evidence does not reveal anything further about the identity or disposition of those guns.

[27] *Johnson v. Johnson*, 2011 Ark. App. 276, 378 S.W.3d 889.

[28] *Kuelbs v. Hill*, 2010 Ark. App. 427, 379 S.W.3d 47.

position to determine a witness's credibility.[29] We therefore decline to hold that the trial court's decision to treat the guns as marital property was clearly erroneous.

## IV. *Attorney's Fees*

Don's final argument is that the circuit court erred in ordering both parties to bear their own attorney's fees. He contends that the court should have awarded attorney's fees to him because Cheryl had the greater ability to pay. He cites his age, ill health, and limited income as justification for a fee award in his favor. He also claims he is entitled to fees in light of other matters that occurred during trial, along with Cheryl's alleged "intentional" dissipation of Bethany's assets and "illusory" loans from Helen.

It is well established that the circuit court has the inherent power and discretion to award attorney's fees in a divorce case.[30] The trial court has the superior ability to make this determination, and we will not reverse absent an abuse of discretion.[31]

The court did not abuse its discretion here. We note initially that we have rejected Don's arguments regarding the sale of Bethany's assets and Cheryl's acquisition of the Eureka Springs properties. We further observe that the parties' marital property was evenly divided by the divorce decree and each stands to benefit from the proceeds once the property is sold. Cheryl was also given responsibility for most of the existing debt, and Don received some foreign currency as his separate property, which the testimony showed had a value of

---

[29] *Fields*, *supra.*

[30] *Guthrie v. Guthrie*, 2015 Ark. App. 108, 455 S.W.3d 839.

[31] *Webb*, *supra.*

$80,000. The issue of attorney's fees must be viewed in light of and in conjunction with property-distribution issues.[32] As well, a court does not abuse its discretion simply by failing to order the party having more income to pay the other party's attorney's fees.[33]

Under these circumstances, we will not reverse the trial court's ruling on this point.[34]

Affirmed.

VIRDEN and HIXSON, JJ., agree.

*Owings Law Firm*, by: *Tammy B. Gattis*, for appellant.

*Wood Law Firm, P.A.*, by: *Russell A. Wood*; and *Robert S. Tschiemer*, for appellee.

---

[32] *Id.*

[33] *Id.*

[34] Don asks that we strike Cheryl's supplemental abstract and addendum on the ground that they are unnecessary and duplicative. We deny the motion to strike. However, we note that we have not considered Cheryl's supplemental abstract and addendum in making our ruling.