Cite as 2020 Ark. App. 345

# ARKANSAS COURT OF APPEALS
DIVISION III
No. CV-18-805

| | |
|---|---|
| VIRGINIA CHRISTINE NORWOOD<br>APPELLANT/CROSS-APPELLEE | **Opinion Delivered:** June 3, 2020 |
| V. | APPEAL FROM THE HOT SPRING<br>COUNTY CIRCUIT COURT<br>[NO. 30DR-13-38] |
| PHILLIP DALE NORWOOD<br>APPELLEE/CROSS-APPELLANT | |
| | HONORABLE EDDY R. EASLEY,<br>JUDGE |
| | AFFIRMED ON DIRECT APPEAL;<br>AFFIRMED ON CROSS-APPEAL |

## WAYMOND M. BROWN, Judge

In this contentious divorce proceeding that has spanned more than five years, both spouses appeal. Appellant Christine Norwood appeals from the circuit court's denial of child support during the pendency of this action for the parties' now adult son, the court's refusal to award her spousal support, and the court's equal division of marital property. Appellee Phillip Norwood cross-appeals from the denial of two contempt motions and the circuit court's refusal to make an unequal property distribution based on Christine Norwood's having transferred money from marital bank accounts to her personal accounts. We affirm the circuit court's order.

The parties married in 1979, when Christine was sixteen years old. The parties separated on February 1, 2013. At the time of separation, only one of the parties' five children, Austin, was still a minor, aged fourteen. During the marriage, the parties owned

a livestock business, Rising Creek Farms, and a logging company, Norwood Logging, Inc. Both parties worked in the businesses.

Phillip filed his complaint for divorce on February 6, 2013, asking that the court make an equitable division of the property rights and debt obligations. Christine filed her answer and counterclaim seeking custody of Austin, child support, alimony, and an equal division of the marital property.

A temporary hearing was held in late March 2013. Christine was awarded temporary custody of Austin and allowed to remain in the marital home. The issue of child support was held in abeyance. However, no order was entered from this hearing, and no ruling was issued until the final ruling in the order appealed from.

Other hearings were held in late spring and early summer 2013 that resulted in orders directing that all property, real and personal, belonging to the parties or their businesses be sold by the clerk and the net proceeds deposited into the registry of the court.

On June 12, 2013, the court entered a decree granting Christine a divorce but reserving all other issues pending completion of the final hearing. Although the decree mentioned that Austin was still a minor, it did not specifically award custody or support to either party.

The gross proceeds from the auction of logging equipment and the parties' vehicles was $1,474,224, with net proceeds after payment of the debts associated with the equipment and vehicles of $866,087.54. The total proceeds from the sale of the cattle was $170,266.47, with two loads of cattle under Christine's control remaining to be sold. The commissioner's sale was held, and the parties' real property sold for $1,103,300. Phillip purchased two tracts

totaling 505 acres for $490,000. Christine purchased four tracts totaling 245 acres for $885,200. Third parties purchased tracts for $142,100.

On September 15, 2014, the circuit court entered an agreed order making a partial distribution of the funds held in the registry of the court.[1] After payment of state and federal taxes of $69,516 for Phillip and $71,039 for Christine, together with payment of approximately $15,000 in other debts, $426,833.03 was distributed to Phillip and $134,081.28 was distributed to Christine.[2]

Christine filed a motion in October 2015 asking the court to rule on the issue of temporary support for Austin. The motion asserted that the issue was developed at the March 2013 temporary hearing and that the court took the matter under advisement. The motion further alleged that Phillip had not contributed to Austin's support.

Also, in October 2015, Phillip was found to be disabled by the Social Security Administration, with the disability dating back to July 2012. He received back pay, and Christine, on behalf of Austin, who was still a minor, received approximately $20,600 in a lump-sum child-benefit payment. Christine thereafter received $960 per month from Social Security.

---

[1]There had been other agreed orders entered directing the court clerk to pay tax debts (state and federal income taxes and real property taxes) for the parties as well as for certain educational expenses for Austin.

[2]In its final order, the court explained that the disparity in the distributions was due to the parties' using funds generated by the auctions to purchase back assets they each wished to keep, primarily real estate.

A two-day bench trial was held December 15–16, 2016. On March 18, 2018, the circuit court entered its final order. In it, the circuit court found (1) that an unequal division of marital property would not be appropriate; (2) that all proceeds from the sales of the parties' property (real and personal) were marital property; (3) that there was no obligation for past child support because Austin had reached the age of eighteen and had been supported by both marital funds and Phillip's disability payments; (4) that Christine had received a lump sum of approximately $20,000, together with monthly payments of $960 based on Phillip's disability; (5) that there was insufficient evidence to find that the actions of either Phillip or Christine had risen to the level of being contemptuous; (6) that there was insufficient evidence to prove that there were missing assets, trucks, trailers, or other equipment; and (7) that there was insufficient evidence to find that certain financial transactions were improper or of a nature that would cause an adjustment to the otherwise equal distribution of the assets or debts. Christine's request for alimony was denied.

This appeal and cross-appeal timely followed.

I. *Arguments on Appeal*

In her brief Christine argues four points on appeal, contending that the circuit court erred in finding that Phillip was not obligated to pay temporary child support without first making the findings required by Arkansas Code Annotated section 9-12-312 and by Administrative Order No. 10; in failing to consider income Phillip earned during the pendency of the case for child support purposes; in failing to set forth findings to determine the issue of spousal support and in failing to award spousal support; and in allowing an equal division of personal property.

4

On cross-appeal, Phillip argues that the circuit court abused its discretion when it denied both of his contempt motions and that the court clearly erred when it refused to make an unequal property distribution in Phillip's favor due to Christine's having transferred money from marital accounts to her personal accounts.

Because of some overlap, we discuss the parties' arguments topically.

## II. *Standard of Review*

Arkansas appellate courts review divorce cases de novo on the record.[3] The circuit court's findings pertaining to the division of property will not be reversed unless they are clearly erroneous or against the preponderance of the evidence.[4] A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made.[5] We also give due deference to the circuit court's determination of the credibility of the witnesses and the weight to be given to their testimony.[6] This court will not substitute its judgment for that of the circuit court, which observes witnesses firsthand.[7]

---

[3]*Moore v. Moore*, 2019 Ark. 216, at 6, 576 S.W.3d 15, 20.

[4]*Id.*

[5]*Id.* at 7, 576 S.W.3d at 20.

[6]*Id.*

[7]*Riddick v. Harris*, 2016 Ark. App. 426, at 5, 501 S.W.3d 859, 865.

III. *Child Support*

Christine makes two related arguments regarding the circuit court's ruling on child support. First, she argues that the court erred in not making the determinations required by Arkansas Code Annotated 9-12-312 and Administrative Order No. 10 before finding that Phillip was not obligated to pay child support for Austin from the commencement of the action until Austin turned eighteen in August 2016. Second, she contends that the circuit court erred in not considering the income Phillip earned during the pendency of the divorce in determining Phillip's support obligation. She asks that this court consider the evidence she cites and "determine the amount of child support that is reasonable and that should have been paid for the support of Austin, beginning at the first of the case when Austin was fourteen (14) years of age and until his eighteenth birthday on August 24, 2016."

The circuit court made the following findings regarding child support:

12. Phillip was approved for social security disability in October of 2015. The Social Security Administration determined that Phillip was disabled as of July 31, 2012. Christine, on behalf of Austin, received benefits in the form of back pay based on Phillip's disability. Phillip receives $1,920.00 in the form of disability benefits and Christine, on behalf of Austin, receives $960.00 per month representing 30% of Phillip's total monthly benefit in the amount of $2,880.00. Christine, on behalf of Austin, received approximately $20,160.00 as a lump sum payment based on back payments of Phillip's disability.

13. There is no obligation for past child support due to the fact that Austin was supported during this litigation primarily from marital funds and disability payments received due to Phillip's disability. Furthermore, there is no obligation for continuing child support because Austin has now reached the age of majority.

We review an appeal from a child-support order de novo on the record, but we will not reverse a finding of fact by the circuit court unless it is clearly erroneous.[8] In reviewing

---

[8]*Fischer v. Fischer*, 2018 Ark. App. 519, 563 S.W.3d 601.

6

a circuit court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony.[9] As a rule, when the amount of child support is at issue, we will not reverse the circuit court absent an abuse of discretion; however, a circuit court's conclusion of law is given no deference on appeal.[10]

Although listed as her main argument, Christine does not expressly address the circuit court's alleged failure to follow the statutory procedures for determining child support set forth in Arkansas Code Annotated section 9-12-312 or in Administrative Order No. 10. Instead, her argument is basically a request that we reweigh the evidence in her favor. Unlike Phillip, she does not attempt to set forth a calculation of what she believes to be the correct amount of child support due. Moreover, Christine fails to acknowledge that it is settled law in Arkansas that Social Security benefits can be substituted for child-support payments.[11] She does not challenge the circuit court's finding that support was not necessary in part because of her receipt of the $20,000 lump-sum payment. She does, in her reply brief, point to Austin's testimony that he received both the lump-sum check from Social Security, together with the $960 monthly checks and that he kept all the money and did not share it with anyone. However, this presents a credibility issue for the circuit court.[12]

---

[9]*Id.*

[10]*Id.*

[11]*State Office of Child Support Enf't v. Harris*, 87 Ark. App. 59, 61, 185 S.W.3d 120, 122 (2004).

[12]*Moore, supra.*

Under these circumstances, we cannot say that the circuit court's ruling on child support was clearly erroneous.

## IV. *Alimony*

Christine next contends that the circuit court erred in failing to award her alimony. Phillip argues that the circuit court cannot now enter an alimony award because it did not do so when the divorce decree was entered. He further argues that no alimony was warranted.

In its final order, the circuit court addressed Christine's request for permanent alimony, stating that it considered the following factors: (1) the financial need of Christine and Phillip's ability to pay; (2) the financial circumstances of both Christine and Phillip, including their financial affidavits introduced into evidence; (3) the amount and nature of income, both current and anticipated, of both Christine and Phillip; (4) the extent and nature of the resources and assets of both Christine and Phillip; and (5) the earning ability and capacity of both Christine and Phillip. Based on those factors and the evidence presented, the court denied Christine's request for alimony.

An award of alimony is not mandatory but is solely within the circuit court's discretion.[13] We will not reverse absent an abuse of that discretion.[14] An abuse of discretion means discretion improvidently exercised, i.e., exercised thoughtlessly and without due

---

[13]*Johnson v. Johnson*, 2018 Ark. App. 308, 550 S.W.3d 91.

[14]*Carr v. Carr*, 2019 Ark. App. 513, 588 S.W.3d 821.

8

consideration.[15]  The circuit court is in the best position to view the needs of the parties in connection with an alimony award.[16]

An award of permanent alimony is authorized under Arkansas Code Annotated section 9-12-312(a),[17] which provides that when a decree of divorce is entered, the circuit court may enter an order concerning alimony that is reasonable taking into consideration the circumstances of the parties and the nature of the case.

Although the circuit court denied Christine's request on the merits, we address an issue raised by Phillip and affirm on that alternate basis. In *Grady v. Grady*, the supreme court explained:

> This court has sent mixed signals on the question whether a chancellor may enter a decree pursuant to which alimony may be made effective some time after the divorce has been entered.  The statute makes it clear that the basic alimony decision is to be made when the divorce decree is entered.  In *Miller v. Miller*, 209 Ark. 505, 190 S.W.2d 991 (1945), a claim for alimony was raised some months after the decree of divorce.  We denied the claim because there was no provision for it in the decree.  However, the opinion contained this language:
>
> > There was no language in the divorce decree of September 25, 1944, reserving the question of alimony for subsequent disposition.  When Mrs. Miller failed, either to have monthly payments of alimony provided in the decree of divorce, *or to have the question of alimony reserved for further consideration*, she allowed the decree to become res judicata on the question of alimony . . . . [Emphasis in *Grady*.]
>
> Yet in [*Ford v. Ford*, 272 Ark. 506, 616 S.W.2d 3 (1981),] we held the chancellor had no power to retain jurisdiction or to treat alimony as a matter "reserved for further consideration."
>
> > It is inequitable to hold that a spouse who may be entitled to alimony is forever barred from receiving it because the spouse who should pay it cannot at the

---

[15]*Id.*

[16]*Id.*

[17](Supp. 2019).

moment of entry of the decree. It is illogical to hold, as we did, that alimony may be raised or lowered upon a showing of changed circumstances but that the spouse who may have an obligation to pay alimony may not be made to do so when his or her circumstances permit it just because they did not permit it at the time the obligation was determined.

The answer to this problem lies in our holding here that, if either spouse is entitled to alimony, the chancellor must comply with the statute by making that decision when the decree is entered. If circumstances prevent the spouse who is to pay the alimony from being able to do so, then the court may recite that fact and decline to award a specific amount. Thereafter, if circumstances change in a way that will permit the payment of alimony, the party who has been determined to be entitled to it may petition the court. By following this procedure, the court will have complied with the statute without resorting to the sort of subterfuge inherent in awarding a nominal amount.[18]

Despite Phillip's having raised the *Grady* issue earlier in the litigation, Christine does not address *Grady* at all.

Christine's position—set forth in her reply brief—that the alimony issue was reserved by the provisions in the decree stating that "[a]ll remaining issues are held in abeyance pending the completion of the final hearing" is simply inconsistent with *Grady*. There was no mention of alimony at the June 11, 2013 hearing resulting in the divorce decree nor is there any specific mention of alimony in the divorce decree itself.[19] According to *Grady*, the basic decision of whether either spouse is entitled to alimony *must* be made at the time the divorce decree is entered. That basic decision was not made when the decree was

---

[18] *Grady*, 295 Ark. 94, 99–100, 747 S.W.2d 77, 80 (1988); *see also Mulling v. Mulling*, 323 Ark. 88, 912 S.W.2d 934 (1996).

[19] Christine testified at the September 5, 2013 hearing that she was seeking spousal support and discussed some of the relevant factors. However, as discussed, that is too late under *Grady* and *Mulling*.

entered in the present case. Therefore, under the statute, the circuit court could not properly award alimony in its final order, entered almost five years after the decree.

We acknowledge that the circuit court, in essence, bifurcated the proceedings because it realized that the case could not be finished on the day scheduled for trial without several more hours of testimony late into the evening. However, we remind the bench and bar that the basic decision on alimony *must* be made at the time of the decree.[20] It is also important to note that such a general reservation as in this case is insufficient to comply with *Grady* and *Mulling*. *Grady* only allows alimony to be reserved when the payor's circumstances do not permit an award at the time the decree is entered. In fact, Christine's argument is directly contrary to such a reservation because she argues that Phillip had the resources to pay alimony during the pendency of the case.

## V. *Property Division*

Both parties challenge the circuit court's division of marital property. Christine's argument is that the circuit court erred in equally dividing the marital property because several large items of logging equipment, including flatbed trailers and logging trailers, were not present at the sale and thus were not sold. She contends that Phillip secreted them so that he could operate a new logging company with his new wife. Phillip's argument is that the court clearly erred when it refused to make an unequal property distribution in Phillip's

---

[20]We also note that our code requires that the issues of child support and property division be made at the time of entry of the decree. These issues were not addressed for several more years.

11

favor because Christine withdrew money from the parties' business account for her personal use.

At the time a divorce decree is entered, the circuit court shall distribute all marital property one-half to each party unless the court finds such a division to be inequitable.[21] There is a presumption that an equal division is fair and equitable.[22] A circuit court has broad powers to distribute property in a divorce case, and it need not do so with mathematical precision.[23] The purpose of our property-division statute is to enable the court to make a division that is fair and equitable under the circumstances.[24] The court is vested with a measure of flexibility in apportioning the total assets, and the critical inquiry is how the total assets are divided.[25]

Here, the circuit court said that it did consider the request for an unequal division of the marital property and concluded that an unequal division would not be appropriate. The court said that in reaching the decision to deny that request, it considered all the evidence and examined the factors set out in the statute.[26] It ordered that the remaining marital assets, not otherwise agreed upon by the parties, be divided equally.

[21]Ark. Code Ann. § 9-12-315(a)(1)(A) (Repl. 2015).

[22]*Davis v. Davis*, 2016 Ark. App. 210, at 5, 489 S.W.3d 195, 199–200.

[23]*Id.*

[24]*Id.*

[25]*Id.*

[26]Those factors include the (i) length of the marriage; (ii) age, health, and station in life of the parties; (iii) occupation of the parties; (iv) amount and sources of income; (v) vocational skills; (vi) employability; (vii) estate, liabilities, and needs of each party and

Like her other arguments, Christine's argument on this point is essentially a request that we reweigh the evidence differently than the circuit court. She points to the fact that certain logging equipment was not listed on the auctioneer's report as having been sold. She also points to the fact that some of the equipment was still titled in the names of the parties or their logging business. In his brief, Phillip explains that some of the trailers Christine lists were sold in the ordinary course of business, while others were still at the business or Christine's residence. He also points out that some trailers were sold without vehicle identification numbers. The circuit court found that there was insufficient evidence to prove that there were missing assets, trucks, trailers, or other equipment. Again, this presents a credibility issue for the circuit court.[27]

Regarding Phillip's request for an unequal division of marital property based on Christine's alleged misappropriation of marital funds, the circuit court found the following:

> 30. There were certain financial transactions by Phillip which were questioned by Christine, as well as certain financial transactions by Christine that were questioned by Phillip. The Court reviewed the exhibits introduced relating to the questioned transactions, as well as the Court's notes regarding testimony on the transactions. Considering these, along with the Court's assessment of the credibility of the witnesses who testified about these transactions, the Court found insufficient evidence to find that these transactions were improper or of a nature that would cause an adjustment to the otherwise equal distribution of the assets or debts. The burden was on the alleging party to prove the impropriety of these transactions. That burden was not met by either party.

---

opportunity of each for further acquisition of capital assets and income; (viii) contribution of each party in acquisition, preservation, or appreciation of marital property, including services as a homemaker; and (ix) the federal income tax consequences of the court's division of property. Ark. Code Ann. § 9-12-315(a)(1)(A)(i)–(ix).

[27]*Moore, supra.*

Phillip wants an unequal distribution of $94,620.15 for money he alleges Christine withdrew. Like Christine's arguments, his argument on this point is a request that we reweigh the evidence differently than the circuit court. ("That evidence—most of it from Christine's own testimony and her account statements—should have compelled the circuit court to give Phillip, as he requested below, an offset for one-half the amounts Christine took, in other words, to make an uneven distribution of property to the extent of that offset.") That decision was based the court's credibility assessment. We defer to the circuit court's determination of the credibility of the witnesses and the weight to be given to their testimony.[28]

## VI. *Contempt*

Finally, Phillip argues that the circuit court erred in declining to find Christine in contempt based on Phillip's August 2013 and November 2013 motions for contempt.

Philip filed his first motion for contempt on August 13, 2013. The motion asserted that Christine refused to allow the sale of multiple items of personal property including fence panels; the Rising Creek Farm metal sign; a horse named "Slow"; exotic birds and other fowl; and many other items. The motion further alleged that Christine was in willful and wanton violation of the court's July 29, 2013 order and should be punished accordingly, including possible jail time. Phillip asked the court to determine an equitable and fair manner to compensate him for the horse and the other items Christine refused to let the clerk sell.

---

[28] *Moore, supra.*

Christine responded to the contempt motion by denying the material allegations. She also asserted that the horse belonged to the parties' daughter and granddaughter. Her response also included a counterclaim for contempt, alleging that Phillip also failed to produce certain personal property for sale.

In his second contempt motion, filed November 20, 2013, Phillip claimed that Christine withdrew marital funds totaling over $30,000 from various bank accounts. One account, styled "Christine Norwood for Austin and Sierra Norwood" with an approximate balance of $42,000, was alleged to contain marital funds.[29] The motion also sought to freeze this account until the court decided whether this account was marital. The motion further alleged that Christine was in willful and wanton violation of the court's standing restraining order and should be punished accordingly, including possible jail time. Phillip asked the court to determine an equitable and fair manner to compensate him for his loss.

Christine responded to the contempt motion by denying the material allegations. She asserted that the funds listed in the accounts had been divided between her and Phillip at a prior hearing. She further asserted that Phillip had accessed her accounts in violation of federal law.[30]

The circuit court made these findings relevant to Phillip's cross-appeal:

25. There is insufficient evidence to find that the actions of either Phillip or Christine have risen to the level of being contemptuous. Consequently, all motions

---

[29]Sierra Norwood is the parties' granddaughter.

[30]Christine's response also asserted that the current account balances shown in the bank statements attached to Phillip's motion demonstrated that she was without funds to support herself and her family. She again asked that the court rule on her requests for child support and spousal support.

15

for contempt filed herein are denied.

. . . .

30. There were certain financial transactions by Phillip which were questioned by Christine, as well as certain financial transactions by Christine that were questioned by Phillip. The Court reviewed the exhibits introduced relating to the questioned transactions, as well as the Court's notes regarding testimony on the transactions. Considering these, along with the Court's assessment of the credibility of the witnesses who testified about these transactions, the Court found insufficient evidence to find that these transactions were improper or of a nature that would cause an adjustment to the otherwise equal distribution of the assets or debts. The burden was on the alleging party to prove the impropriety of these transactions. That burden was not met by either party.

. . . .

32. Phillip filed several motions for contempt during the course of this litigation. These included an incident where Christine allegedly came to the 195–acre tract near where Phillip was living at the time, to inspect the cattle and equipment. The proof at the trial of this matter was insufficient to find that the conduct of Christine rose to the level of being contemptuous and therefore those motions by Phillip are denied.

Phillip argues that the court's findings are clearly erroneous because, according to him, Christine clearly did the acts violative of the circuit court's orders, making them willful. And because her actions were willful, they were contemptuous. However, the argument is overbroad. As with the other issues in this appeal, this issue turned largely on the credibility of the witnesses, and we give due deference to the court's superior position to determine the credibility of the witnesses and the weight to be accorded their testimony.[31] The circuit court found that Christine did not willfully disobey its orders, and on this record, we cannot say that this finding is clearly wrong.

---

[31] *See Ball v. Ball*, 2014 Ark. App. 432, at 5, 439 S.W.3d 92, 94 (facts did not give rise to the level of willful disobedience that would mandate a contempt finding).

16

Affirmed on direct appeal; affirmed on cross-appeal.

MURPHY, J., agrees.

GRUBER, C.J., concurs.

**RITA W. GRUBER, Chief Judge, concurring**. I agree with the majority's disposition affirming this appeal. I differ only in the manner in which the court affirmed the issue of alimony. I would affirm the circuit court's order because its denial of alimony was not an abuse of discretion rather than because the circuit court failed to make an alimony determination in its decree granting Christine the divorce. I do not believe that Phillip properly preserved his *Grady*-based objection to alimony. *See Ary v. Ary*, 2013 Ark. App. 677, at 5, 430 S.W.3d 780, 784. Further, he invited any error regarding the circuit court's failure to include a determination regarding alimony in its June 12, 2013, decree.

Christine specifically requested alimony in her counterclaim for divorce, and her attorney specifically alerted the court at the June 11, 2013, hearing that she was requesting alimony. The court granted Christine the divorce at the conclusion of that hearing, and both parties and the court recognized it would be the only issue decided at that time. The court ended the hearing noting that it was down to "financial things now" and that it was "leaving everything else in abeyance." The court specifically entitled its June 12, 2013, order granting the divorce "Decree of Divorce with Other Issues Held in Abeyance Pending the Completion of the Final Hearing." The order granted the divorce only, failing to specifically determine custody, child support, alimony, or the division of property. Paragraph 5 of the June 12 order states that "[a]ll remaining issues held in abeyance pending the completion of the final hearing." On June 24, 2013, Phillip filed a report with the court listing the issues

17

remaining in dispute that included the following paragraph: "13. **Alimony**. Mr. Norwood disputes that he should be ordered to pay alimony." He did not mention *Grady*. Although Phillip later argued that *Grady* barred the circuit court from awarding alimony, his argument came too late to properly preserve an objection based on *Grady v. Grady*, 295 Ark. 94, 747 S.W.2d 77 (1988).

Finally, I note that the only decision the court made at the conclusion of the June 2013 hearing was to grant Christine the divorce. The court and the parties understood that alimony, child support, and property issues were being held in abeyance pending the completion of the final hearing. The parties' financial situation was complicated, and alimony and property division are complementary devices that a circuit court employs to make the dissolution of a marriage as equitable as possible. *Evtimov v. Milanova*, 2009 Ark. App. 208, at 7, 300 S.W.3d 110, 115. Under the doctrine of invited error, a party may not complain on appeal of an erroneous action of a circuit court if the party induced or acquiesced in that action. *Stowell v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 403, at 7, 586 S.W.3d 671, 675. That is precisely what Phillip did here.

*David A. Orsini*, for appellant/cross-appellee.

*Sherry Burnett*; and *Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellee/cross-appellant.

18